No action has yet been brought against the administrators, and the sole question before us is whether the defendant, one of the parties sharing in the *tort*, is protected by his own wrongful act against responding to the action of the distributees, who were minors, for their share of the note, the action being brought, as it must be, by the administrators. I think there was no error in the action of the court below.                                    No Error.

J. H. SHIELDS v. TOWN OF DURHAM.

*The Code, Sec. 757—Liability of Municipal Corporations for Defective Prisons—Notice.*

1. Section 757 of *The Code*, requiring that claims against municipal corporations shall be presented to the proper authorities and demand for payment as prerequisites to an action to enforce such claims, applies only to demands arising *ex contractu* and not to those arising *ex delicto*.

2. A municipal corporation is held to notice of facts brought to the attention of individual members of its governing body when not in session.

3. Notice to the agent is notice to the principal; and this rule of law is applicable to municipal corporations; but notice to certain petty officials does not bring a case within the rules.

4. A town is responsible in damages for the gross neglect of its officials in the matter of providing suitable protection for the health of persons confined in the receptacle for prisoners.

ACTION for damages for unlawful detention in guard house of defendant, tried before *Starbuck, J.,* at October Term, 1895, of DURHAM Superior Court.

The issues submitted were:

" 1. Was plaintiff injured by the negligence of the defendant?

" 2. What damage is plaintiff entitled to recover? "

After the close of the evidence and the jury had been addressed by two of the counsel for plaintiff and one for defendant, and during the address of another of the counsel for defendant, his Honor stated that, it being conceded by plaintiff that defendant had given general instruction to chief of police to supply the prison with necessary fuel, &c., and that said authority had extended credit to chief of police to do so, he would instruct the jury that plaintiff could not recover, and in deference thereto plaintiff submitted to a non-suit and appealed, assigning as error this ruling of his Honor. A summary of the evidence is set out in the opinion of Associate Justice FURCHES.

*Messrs. Manning & Foushee, J. W. Graham* and *Shepherd & Busbee*, for plaintiff (appellant).

*Messrs. F. A. Green* and *Boone, Merritt & Bryant*, for defendant.

FURCHES, J. : This is an action to recover damages for injuries sustained by plaintiff on account of his imprisonment by defendant in a guard house, improperly constructed, filthy and uncomfortable, without sufficient bedclothing, with window glass out, on a cold-freezing winter night, from which he suffered great pain, and his feet were frozen and his health greatly impaired. The court intimated the opinion, after the evidence was all in, that the plaintiff could not recover, and in deference thereto the plaintiff suffered a non-suit and appealed.

Although this case has been tried twice below, and is here for the second time on appeal, the point is now made for the first time to dismiss the case for the reason that the complaint does not state a cause of action. To sustain this

motion the defendant says that this is an action against a
municipal corporation, and that it is necessary that the
complaint should allege that plaintiff's claim (if he has any)
has been presented to defendant and that defendant has
refused to *audit* and pay the same, as provided in Section
757 of *The Code.* This motion, though made at this late
day, has received our careful attention and has given us
some trouble. But after a thorough consideration of the
matter we have come to the conclusion that Section 757 does
not apply to an action like this, for unliquidated damages.
It is true that the language of this statute is very broad—
" no person shall sue any city ............ unless he shall have
made a demand upon the proper municipal authorities."
And the complaint shall be verified and show, 1st,
" That the claimant presented his claim to the lawful
municipal authorities to be *audited* and allowed, and that
they had neglected to act upon it, or had disallowed it."
While we may have many cases in our Court where this
section has been considered and sustained by dismissing
actions brought without the claim having first been pre-
sented, these cases, so far as our examination has gone,
have all been upon claims *ex contractu.* And we do not
think any will be found where the demand is for damages
on a claim *ex delicto.* Nor have we been able to find any
adjudicated cases in other states to aid us in our construc-
tion. But we find that all the law dictionaries which we
have been able to consult define the word " audit " to
apply only to claims *ex contractu.* Abbott, Bovier,
Rapalje and Lawrence. And these authorities have aided
us in coming to the conclusion that this Section does not
apply to an action for damages like this. Indeed, we do
not see how such a claim as this could be audited. It
might be compromised by the parties. But this is much
more than auditing the same. It is the work of both

parties—the agreement of minds—a contract and not an *ex parte* process of auditing.   For the reasons assigned we refuse to dismiss on the motion of the defendant.

This action was here at Spring Term, 1895, reported in 116 N. C., 394.   That appeal was by the defendant, and we then held that the court erred in not submitting the evidence of the condition of this prison and its improper construction to the jury—probably for the reason that they were not sufficiently averred in the complaint.   But this defect in the complaint has been removed by an amendment, allowed by the court, and made by the plaintiff.   The evidence on this appeal, and that on the appeal at Spring Term, 1895, is generally very much the same, and yet there is a marked difference in some respects which materially affects the case.   There is another marked difference in this appeal and that : the appeal before the Court in 1895 was by the defendant upon the refusal of the court to give certain instructions.   And the court's refusing to give certain instructions was the matter then before the Court.   But this is an appeal by the plaintiff from a judgment of non-suit, upon an intimation of the court that the evidence did not make out a case entitling the plaintiff to recover.   This being the state of this appeal, no evidence tending to exonerate the defendant, or tending to sustain defendant's contentions, can be considered.   And on the other hand, all the evidence tending to sustain plaintiff's action must be taken to be true, and considered in the most favorable light for the plaintiff.   For, while the jury might have discredited some part of it, or indeed all of it, they might have believed all of it.   And while the jury had the right to discredit such testimony, the court had no such right.   Then, the plaintiff testified that he was put in the guard house on a charge of violating an ordinance of the town of Durham, in swearing on the

streets, by one of the town policemen, on the evening of January 7, 1893, upon which charge he was afterwards tried and convicted. That he remained in the guard house until 8 or 9 o'clock next morning, when a friend bailed him out. That it was a bitter cold night, snow on the ground and had been for several days; the wind was blowing cold; the cell in which he was placed was an iron or steel cage 6 or 7 feet square, with a tin or zinc floor covered with ice. There was a bunk in the cage with a mattress on it, and one—only one—blanket, which was wet and covered with excrement. There were window lights broken out and the cold wind blowing in. There was a stove in the prison, but outside and two feet from the iron walls of the cage. That the policeman, who put him in the cage, built up a fire, but it went out. That he slept none all night, suffered intensely, and next morning his feet were badly frost-bitten and his legs swollen, and his health, which had before been uniformly good, had been bad ever since. That he weighed 190 pounds before and only 160 now, and still suffered pain from the injuries received by the imprisonment.

Barbee testified that he was in this guard house in December, 1892; one or two panes of glass were out of the windows then; guard house was very filthy; no fire; very cold weather. Rogers testified that he was in this guard house in the Winter of 1892 and after Christmas. It was very cold—snow on the ground; was in the iron cell; blankets and mattress in the cell were not clean; no fire there; cell not clean. Webb testified that he saw plaintiff in the cell about 7 o'clock in the morning, very cold and numb; teeth chattered. He complained of his hands, feet and body. Guthrie testified that he visited the guard house about three years ago; it was cold weather; guard house in very bad condition; very filthy; cold and cheerless.

Woodall, a witness for the defendant, testified that he was chief of police in 1893, and, with the exception of one year, ever since 1888, and on cross-examination said: "That he complained to the Commissioners, but not in meeting, of the guard house; told them it was too small and could not be properly cleaned. The Commissioners started to build another guard house and hauled the brick, but for some reason did not build it. From the time I was elected chief of police in 1888 to the time Shields was in the guard-house, neither the mayor nor any of the Commissioners ever visited the guard house at all; did not examine to see if there was any fire, or any fuel, or any blankets in the guard house, or whether any window lights were broken out, or whether the shutters were closed the night Shields was in it. Town had no guard house committee."

We have given a part of the testimony in the case, and it is to be seen, taking this as true and uncontradicted, whether a jury might have reasonably found a verdict for plaintiff. The greatest point of difference in the case as presented before, and as presented by the evidence now, is the condition the cell was in, the length of time it had been in this condition, the length of time it is shown that window glass had been broken out, the actual or presumptive knowledge the city authorities had of its condition. And we must suppose that no one will contend that, if they had knowledge of the terrible condition in which this miserable concern was, and the plaintiff's health was impaired by being incarcerated in it on such a night as all the witnesses testify it to have been, the plaintiff should not recover. The general rule is that knowledge of the agent is knowledge of the principal. *Bank* v. *Burgwyn,* 110 N. C., 267; *Bank* v. *School Com.*, at this Term. The doctrine is held not to apply in certain conditions, as to minor officers of municipalities. *Moffitt* v. *Asheville,* 103

N. C., 237. But this rule cannot protect them where they have provided a place of imprisonment which is so badly constructed that a prisoner cannot be reasonably comfortable. *Lewis* v. *City of Raleigh*, 77 N. C., 229. This they are bound to have knowledge of. And although there are certain duties, devolved on ministerial or minor officers of a municipal corporation for reasons of public police, the corporation will not be held liable for, still, it is their duty to give the affairs of the town their personal attention and inspection. And where a city prison has been for months in the terrible, filthy, wet and frozen condition, with window glass broken out as far back as December, 1892, they are presumed to know it, and will be held responsible whether they actually know it or not. Here, it is in evidence that there is no committee in Durham charged with the duty of examining and looking after the town prison, and that the Commissioners had not done so since 1888. The law will not tolerate such gross negligence as this, without holding them responsible. The chief of police says he told the Commissioners about the bad condition of the prison, " but not in meeting." So we see that the Commissioners had information of the bad condition of things. And the argument of the defendant is that when they were out on the streets of Durham they knew the prison was an unfit place to put a man in, filthy, wet and cold, with window glass broken out. But when they got " in meeting " they knew nothing about it. This will not do. The law does not tolerate such forgetfulness as this in town authorities. We have said at this Term of the Court that information received by one member of a school board about the business of the board should have been given to the board, and that notice to him was notice to the board, and they were bound by it. We see no public policy or other reason why the same rule should not apply

here.  And this does not conflict with what is said in *Moffitt* v. *Asheville*, *supra*, nor with anything said by the Court when this case was here before.  If the evidence offered by the plaintiff is true (and the Court in this appeal is bound to take it as true) there is sufficient evidence to warrant the jury in finding a verdict for the plaintiff. There was error in not submitting the case to the jury, and there must be a new trial.

Error.   New Trial.