LEVIN v. TOWN OF BURLINGTON.

(Filed November 5, 1901.)

MUNICIPAL CORPORATIONS—*Damnum Absque injuria—Smallpox—Illegal Arrest—Acts 1893, Ch. 214.*

A city is not liable to one arrested on the ground of having been exposed to smallpox, where the officers act without malice.

DOUGLAS, J., dissenting.

ACTION by Koen Levin against the City of Burlington, heard by Judge *W. B. Council,* at May Term, 1901, of the Superior Court of ALAMANCE County. From a judgment for the defendant, the plaintiff appealed.

*Bynum & Bynum,* for the plaintiff.
*C. E. McLean,* for the defendant.

FURCHES, C. J. This is an action to recover damages for the wrongful arrest, detention and ill-treatment of plaintiff by the defendant city. The defendant demurred *ore tenus* to plaintiff's complaint, and we know of no better way of stating the case than by inserting the entire complaint, which is as follows:

"The plaintiff, for cause of action, alleges:

"1. That he is a resident of the city of Burlington, and is a peddler by occupation.

"2. That the city of Burlington is a municipal corporation, duly chartered by the Legislature of North Carolina, and was managed at the times hereinafter mentioned by a Mayor and a Board of Aldermen or Commissioners, duly elected by the people within the corporate limits of the said town; and by policemen, duly appointed by the said Board of Aldermen or Commissioners.

"3. That on or about the .. day of February, 1899, the plaintiff came to the town of Burlington, and stopped for one night at a boarding-house in said town, kept by Mrs. Mary Ingle, where he had been stopping when in Burlington, for some months, leaving said town the next morning with his horse and wagon and goods, and went to the factory known as Altamaha, nine miles distant from said town, for the purpose of selling his goods and wares, as he was licensed to do by the laws of North Carolina.

"4. That plaintiff had never in his life been exposed to smallpox up to that time.

"5. That after arriving at Altamaha, one James Zachary, who was the duly appointed police officer of said town of Burlington, as plaintiff is advised and believes, followed him from Burlington to said Altamaha, and arrested him, under and by virtue of an alleged warrant issued by the Mayor of said town of Burlington.

"Plaintiff does not know the charge contained in said warrant, and has applied to the Mayor for said warrant, who told him it had been destroyed; but he avers, from information and belief, that said Mayor issued said warrant, and sent the same to Altamaha by the police officer of the town, and had plaintiff arrested, under special authority of said city, and

under special instruction given by said Board of Aldermen or Commissioners.

"6. That the said Zachary, the policeman of the said town of Burlington, professing to act by virtue of said warrant, did arrest this plaintiff at Altamaha, against his earnest protest, and carried him back to the town of Burlington; that when he got there, he was told by the policeman that he had to go in the house of Mrs. Mary Ingle and stay there fifteen days; that smallpox had broken out in the city, and that this plaintiff had stayed there the night before, and had to go there and stay; that plaintiff protested that he had never been exposed to smallpox in his life; that he had spent the night before there in a room by himself, with no knowledge of any smallpox in the town, and had left in the morning, not being exposed, and he earnestly protested against being put in the house; that he was informed at the time that there was a man in the house who was declared to have smallpox; that he asked for the Mayor to be sent for, or that he be examined before the Mayor; but the Mayor refused to come to him or to allow him to be carried before the Mayor; but he was told by the said policeman he had to go into said house; that he begged the said policeman and one of the Board of Aldermen, one Moore, who, as he is advised and believes, was acting for the said town by the authority of the town, not to confine him in a house where smallpox was, as he had a great dread of the disease, but to put him in another house, and he would pay all the expenses, and pay for a man to watch him and see that he did not run away; that this request was refused, and he then begged them to put him out in a field, and hire a man to watch him, and he would pay all the expenses, and also for the expense of keeping his horse; but this was also refused, and he was told by said Moore and Zachary he was to go in said house; that he told them that he had been vaccinated several times, and showed the marks; but in spite

of all his protestations, he was forced to go into said house where the man was down with smallpox, and was kept there for twenty-one days; his horse was taken from him, and his goods also put in the house, and kept there during the whole time plaintiff was.

"7. That the said house was not a house of detention, or a pest-house, provided by the town for quarantine purposes, at all, and the imprisonment of plaintiff was false and illegal.

"8. That against the protest of plaintiff, he was forced to be again vaccinated twice during his confinement, and that neither of them had any effect; and they made this plaintiff pay for said vaccination.

"9. That during his confinement in said house, the man who was declared to have smallpox died in said house; that before his death the officers in charge tried to force this plaintiff to go into his room and wait on him, but this he refused positively to do.

"10. That when he was released he found that the authorities of the town had been using his horse, and that he had been badly treated, very much reduced in flesh and depreciated in value, to-wit, in the sum of $25.00.

"11. That he had about $150.00 worth of goods, which, by reason for his exposure during all this time to smallpox, and to him; most of them he has never moved from the house, and by reason of this he was damaged $150.00.

"12. That his business was stopped during all this time, and he lost all the profits, as well as his time, which was worth reasonably the sum of five dollars per day.

"13. That the plaintiff suffered great agony of mind by reason of his exposure during all this time to smallpox, and by the great indignity and false arrest and imprisonment.

"That after being reelased it was several months before he could do anything at his business, as it became known he had been in the house and exposed to smallpox, and people

would not have anything to do with him; and he was damaged by this in the sum of five hundred dollars.

"That by reason of his loss in his business, and his loss of his goods, and damage to his wares, and the indignities to his person, and his false arrest and imprisonment, and agony of mind and suffering, he was damaged in the sum of five thousand dollars.

"Wherefore, plaintiff demands judgment for the sum of five thousand dollars, and his costs of suit, to be taxed by the Clerk."

The demurrer admits the facts, and from these facts it must be admitted that the plaintiff received heroic treatment and was damaged. But it is not every damage that creates a cause of action. This is where there is damage without injury—*damnum absque injuria*—damage caused by lawful means; as where one is arrested under regular process of law, charged with a violation of the criminal law of the State, but, upon investigation or trial, it appears that he was not guilty of the crime charged, and should not have been arrested. By such arrest and detention he has been damaged, but he has no right of action unless he can show that such arrest was malicious. So, with the plaintiff, if he was arrested and detained by the officers of the law, under the process of the law, and for the purpose of enforcing the law, he has no right of action, unless he can show malice or improper conduct on the part of the officers in its execution. And then his right of action would be against the party or parties maliciously instituting the proceedings, or the officers for improper conduct in making the arrest and detention. That a municipality may be sued and held liable for damage in many cases is held in *Lewis v. City of Raleigh,* 77 N. C., 229; *Moffitt v. City of Asheville,* 103 N. C., 255, 14 Am. St. Rep., 810, and *Shields v. Town of Durham,* 118 N. C., 450, 36 L. R. A., 293. But these and such cases are for the neg-

lect in failing to perform some required duty—such as erecting and keeping in proper condition city prisons. by reason whereof the health of prisoners has been seriously impaired the failure to work and keep the public streets in repair and free from obstructions, whereby some person suffers injury. These are distinguishable from the case under consideration, where public officers are in the exercise of a public duty, and engaged in enforcing a public law for the public good. They seem to have been acting under Chapter 214, Laws 1893. And if there was any doubt as to this, the plaintiff in his brief expressly alleges that the defendant was acting under sections 14, 15 and 25 of Chapter 214, Laws 1893.

It seems to be settled in this State that a municipal corporation can not be held liable in damages for the enforcement of a public law for the public good. But we will not undertake to run anew, and mark the dividing line between cases in which municipalities are liable for damages and those in which they are not liable. This has been done in *McIlhenny v. City of Wilmington,* 127 N. C., 149, and cases there cited. And if we were to attempt to do so in this case, it would be to repeat the arguments and authorities cited in that case.

We see no error, and the judgment is
Affirmed.