103 So.2d 35

**FIRST NATIONAL BANK OF AUBURN**

v.

**AMERICAN FINANCE CORPORATION**
of Alabama.

5 Div. 608.

Supreme Court of Alabama.

March 20, 1958.

Rehearing Denied June 5, 1958.

Brown & McMillan, Opelika, for appellee.

Walker & Walker, Opelika, for appellant.

GOODWYN, Justice.

This is an appeal from a final decree of the circuit court of Lee County, in equity, granting relief to the complainant (appellee), the American Finance Corporation of Alabama, as prayed for in its bill for declaratory judgment, denying relief to the respondent and cross-complainant (appellant), The First National Bank of Auburn, Alabama, as prayed for in its cross-bill, dismissing said cross-bill and assessing the costs against respondent. For convenience, appellant will be sometimes referred to herein as the "Bank" and appellee as "American Finance."

The question to be determined is which of the parties is entitled to the proceeds of a certified check drawn by Lowrance Motor Company, Inc., of LaFayette, Georgia, herein sometimes referred to as Lowrance, on the Rossville, Georgia, Branch of the American Bank & Trust Company of Chattanooga, Tennessee, dated February 17, 1954, in the amount of $5,150 and made payable to the order of Trent Moore Motors, American Finance and the Bank. The trial court held American Finance to be entitled to the proceeds and directed the Bank to endorse the check. We have concluded that this was error, necessitating a reversal.

The issuance of this check by Lowrance was the culmination of the following circumstances:

H. E. (Trent) Moore, doing business as Trent Moore Motors in Opelika, Lee County, Alabama, went to LaFayette, Walker County, Georgia, during the latter part of January (January 18th and 28th) and the early part of February (February 4th and 9th) 1954, to purchase four automobiles from Lowrance. Moore took delivery of the four automobiles and brought them to his place of business at Opelika. To pay for the cars Moore gave Lowrance four checks, totaling $7,400 and drawn on his account with the Bank. In connection with the proposed purchase Moore borrowed $6,654 from American Finance. As security for the loan American Finance took a chattel mortgage on each separate car. These chattel mortgages were recorded in the office of the Judge of Probate of Lee County, Alabama, wherein Moore resided, at 4:30 P.M. on February 12, 1954, and were recorded on February 13, 1954 in Walker County, Georgia, wherein Lowrance was doing business. On February 10, 1954, two days before the mortgages were recorded in Lee County (see §§ 110 and 123, Code 1940, Tit. 47), Lowrance came to Moore at Opelika for the purpose of repurchasing these cars from Moore. The total amount to be paid was $7,225. Of this, $200 was paid in cash and the remainder by four checks drawn by Lowrance to the order of Moore on the Rossville, Georgia, Branch of the American National Bank & Trust Company of Chattanooga, Tennessee, in the amounts of $1,750, $1,750, $1,875 and $1,650, respectively. Moore deposited these checks to his account in the Bank on February 10, 1954, and the Bank, on the same day, honored and paid three of the checks, totaling $5,415, which Moore had given to Lowrance in payment for the cars. One of the checks given by Moore to Lowrance (in the amount of $1,875) was not honored and paid because of insufficient funds to the credit of Moore's account. Lowrance, on learning of non-payment of said check, stopped payment on the four checks given by him to Moore. Moore and American Finance, on learning that Lowrance had stopped payment on the checks, went to Lowrance and secured from it a check made payable to Trent Moore Motors, American Finance and the Bank in the amount of $5,150. This check was dated February 17, 1954, and represented the total of the four checks given by Lowrance to Moore less the amount of the check ($1,875) given by Moore to Lowrance which was not honored and paid by the Bank because of insufficient funds in Moore's ac-

count. On the back of the check, above the place for indorsements, Lowrance placed the following:

"This check is accepted in full settlement of the following checks, dated February 9, 1954, made payable to Trent [sic] Motors, Opelika, Ala.

| "No. 0531 | $1,750.00 |
|---|---|
| "No. 0532 | 1,875.00 |
| "No. 0533 | 1,650.00 |
| "No. 0534 | 1,750.00 |

"Indorsements to be as follows:" Moore endorsed the check and turned it over to American Finance. On February 19, 1954, American Finance had the check certified by the drawee bank. In certifying it the drawee bank placed thereon the following certificate:

"No. 364
"Certified
"Payable Only As Originally Drawn And When Properly Endorsed
"Feb. 19, 1954
"Rossville Branch American National Bank & Trust Co."

American Finance then sought the Bank's endorsement. Upon refusal of the Bank to endorse, American Finance brought its bill for declaratory judgment seeking a declaration that it is entitled to the proceeds of the check and further seeking an order requiring the Bank to endorse the check, which was placed in the hands of the register. The Bank answered the bill denying American Finance's right to the proceeds of the check and also filed a cross-bill seeking for itself relief similar to that sought by American Finance. It is from the decree granting relief to American Finance and dismissing the Bank's cross-bill that this appeal is taken.

The position taken by the Bank is that the check of February 17th (for $5,150) was given by Lowrance in place of the four checks Lowrance had given to Moore (totaling $7,025), less the amount of Moore's check (for $1,875) to Lowrance which was not honored and paid by the Bank; that since the Bank honored Moore's checks on the strength of Moore's deposit to his account of Lowrance's checks, the Bank thus became the holder for value in due course of Lowrance's checks; and since Lowrance's check of February 17th was given for the purpose of taking up his earlier checks on which he had stopped payment, the Bank is entitled to the proceeds of the later check. To state the Bank's position another way: When the Bank paid Moore's checks drawn on his account, in reliance upon Lowrance's checks which Moore deposited to the credit of his said account, the Bank thereby became a holder for value in due course of Lowrance's checks. Being entitled to recover on said checks against Lowrance (as already determined in a suit brought by the Bank against Lowrance in the United States District Court for the Northern District of Georgia and affirmed by the Fifth Circuit Court of Appeals, Lowrance Motor Company v. First National Bank of Auburn, Alabama, 5 Cir., 238 F.2d 625), it follows that the proceeds of Lowrance's check of February 17th, given as it was to replace Lowrance's checks held by the Bank, should go to the Bank in satisfaction pro tanto of its claim against Lowrance.

The position taken by American Finance seems to be this: Moore acquired title to three of the cars when the Bank paid the three checks Moore gave to Lowrance. Since the check to the fourth car was not paid, title to said car did not pass from Lowrance to Moore, the title remaining in Lowrance. When Lowrance attempted to repurchase the cars he gave Moore the four checks, none of which was paid (Lowrance having stopped payment on them); hence, Lowrance did not thereby acquire title to the cars, that is, the three to which Moore had title. That, prior to issuance by Lowrance of the $5,150 check on February 17th, certified on February 19th, Lowrance and the Bank both had notice of American's mortgages on the cars, the mortgages having been recorded both in

Alabama and Georgia prior to issuance of the February 17th check. That check, upon being certified, constituted payment and operated to pass title to three of the cars from Moore to Lowrance. Therefore, since said $5,150 check was actually issued in payment for the three cars, American's mortgage liens on said cars attached to the proceeds of the sale evidenced by said check and, consequently, the proceeds of the check should go to American Finance.

So far as the record before us shows, Lowrance became an innocent purchaser of the cars for a valuable consideration when he gave to Moore, on February 10th, the $200 in cash and the four negotiable checks in payment therefor. Donahoo Horse & Mule Co. v. Durick, 193 Ala. 456, 69 So. 545. At that time American Finance's mortgages had not been recorded. (We do not have any question here as to whether Lowrance had actual notice of American Finance's mortgages or of some fact or circumstance sufficient to put it on inquiry, which, if followed up, would have resulted in discovery of the encumbrances.)

To the extent presently pertinent, Code 1940, Tit. 47, § 123, supra, provides as follows:

"Conveyances of personal property to secure debts, or to provide indemnity, are inoperative against creditors and purchasers without notice, until recorded, * * *."

In discussing this statutory provision (§ 3386, Code 1907) in Donahoo Horse & Mule Co. v. Durick, supra, at pages 458 to 460 and 464 of 193 Ala., at pages 546 of 69 So., this court, per McClellan, J., had this to say:

"* * * The defense successfully asserted below was that the defendant was a bona fide purchaser for value and without notice of the plaintiff's existing mortgage on the animal. The mortgage was executed June 10, 1913. On July 3, 1913, the mortgage was filed for record. On July 2, 1913, defendant and the mortgagor made this trade: Defendant agreed to give the mortgagor, for the horse in suit, $10 in value in merchandise, a horse then owned and in the possession of the defendant, and to later pay the mortgagor $95 in money. This trade was, on that day, effected to this extent: The mortgagor delivered the horse in suit to the defendant, and the defendant delivered the merchandise and the other horse to the mortgagor. On July 4, 1913, the very next day after the mortgage was filed for record, and after constructive notice thereof had become operative upon the defendant in virtue of the filing of the mortgage for record, the defendant paid the mortgagor the $95, as stipulated in the agreement between them. On the facts stated, the point was taken below, and is stressed here, that one who does not pay in full the purchase price of personal property at the time of the purchase or before notice of the outstanding right or claim is brought home, or is imputed under the registration statutes to him, cannot invoke the protection the law accords to a bona fide purchaser for value and without notice.

\* \* \* \* \* \*

" In the decision of Dudley v. Abner, 52 Ala. 582, this court construed the above section (then section 1561 of the Code of 1867) [§ 3386, Code 1907] in respect of the term 'purchaser'; the court saying:

" 'And he is a purchaser for a valuable consideration who parts with something of value for the thing purchased.'

"This case was decided in 1875. The statute in question has been thrice reenacted since the decision in Dudley v. Abner. Its readoption comprehended the construction put upon it by this court in that case. This construction does not, as is apparent, make a condition to one's being a bona fide purchaser that he shall have paid, or shall have become irrevocably bound to pay,

the whole purchase price he agreed to pay before notice of the outstanding claim or lien. The purpose of such statutes is, as said by Jones on Chattel Mortgages, at section 313, 'to protect those who have acquired rights under circumstances which would render them liable to be defrauded unless so protected.' This object confirms the correctness of the announcement made in Dudley v. Abner, as before quoted. * * *

\* \* \* \* \* \*

"The statute renders void, as against purchasers and creditors, mortgages not filed for registration; and the defendant, having parted with value before notice, was a purchaser as persons in that category are defined in Dudley v. Abner. If the purchaser has innocently and in good faith assumed such a position as that his deprivation of the property he has bought would leave him in a worse position than formerly, because of values he has delivered or new irrevocable obligations he has assumed, he is entitled to the protection the law accords bona fide purchasers for value and without notice. 35 Cys. pp. 351, 352; 24 Am. & Eng.Ency. of Law, p. 1171. If he buys, however innocently, on a credit, and gives only a nonnegotiable promise to pay, and before payment thereof receives notice of the adverse claim, or of facts sufficient to put him on inquiry in the premises, he cannot invoke the protection the law accords bona fide purchasers; for his action in paying in such circumstances must be attributed to his own fault, and he has not been really prejudiced. Hoyt & Bros. Mfg. Co. v. Turner, supra [84 Ala. 526, 4 So. 658]; Jones on Chat. Mortg. § 313."

It seems to us that the holding in Donahoo is of controlling influence in the case now before us. In the light of that decision the contention of American Finance cannot be sustained. It is apparent from the statement on the back of Lowrance's check of February 17th that said check was issued for the purpose of paying the four checks Lowrance gave to Moore in payment for the cars. The Bank is the holder for value in due course of those checks and is entitled, we think, to the proceeds of the check here involved.

The decree appealed from is due to be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.