**CENTRAL BANK AND TRUST COMPANY, Appellant,**

v.

**GENERAL FINANCE CORPORATION et al., Appellees.**

**No. 18662.**

United States Court of Appeals Fifth Circuit.

Nov. 30, 1961.

Rehearing Denied Dec. 29, 1961.

Richard J. Horwich, Pallot, Marks, Lundeen, Poppell & Horwich, Miami, Fla., for appellant, Central Bank & Trust Co.

Edward McCarthy, Jacksonville, Fla., Jerry B. Crockett, Miami, Fla., Ellott Adams, Anderson M. Foote, Jr., Mc-Carthy, Adams & Foote, Jacksonville, Fla., for appellee, General Finance Corp. of Florida.

Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The disposition of an earlier appeal of this case is shown by the opinion in General Finance Corporation of Fla. v. Central Bank and Trust Company, 5 Cir., 264 F.2d 869. A brief recital of the facts which were before the Court on the former appeal is necessary. Anthony Clausi, trading as Auto Wholesaler, was in the automobile business at Miami, Florida. He borrowed money in substantial amounts from General Finance Corporation and undertook to secure the loans with trust receipts on motor vehicles. Clausi carried a bank account with the appellant, Central Bank and Trust Company. General Finance Corporation, the appellee, here called GFC, carried a bank account with The First National Bank of Miami. On July 15, 1957, Clausi drew a check to GFC on Central. GFC deposited the check to its credit in First National on July 17. The credit was conditioned upon collection by First National. The check was presented and delivered by First National to Central on July 18, a Thursday. On July 22, Monday, Central returned the check to First National with a slip attached bearing the notation "Drawn against Uncollected Funds." Over the objection of GFC the amount of the check, $28,300, was charged back to it by First National. GFC brought suit against the two banks asserting that since the check was not returned by Central to First National before the close of business on July 19, 1957, it did not thereafter have the right to do so. The suit was brought in the United States District Court for the Southern District of Florida. Diversity of citizenship was the basis for federal jurisdiction. The district court, on motions to dismiss and for summary judgment, entered a summary judgment for the defendants. On appeal this court held that, under Florida Statutes § 676.55 F.S.A.,[1] the retention of the check longer than the permitted period constituted payment and that the complaint stated a cause of action against both Central and First National. The judgment was reversed, and the cause was remanded.

Upon the remand of the cause to the district court, Central filed its answer, counterclaimed against GFC and cross-claimed against First National. The cross-claims against First National are not involved on this appeal. We are concerned with the defenses asserted by Central's answer and counterclaims. By these pleadings Central asserted that the payment of the checks, given by Clausi to GFC and drawn on Central, resulted from the retention of the check in the amount of $28,300 beyond the statutory period and constituted Central a holder in due course of the checks. Central contended, and contends, that GFC had information superior to that of Central as to the affairs of Clausi and because of this GFC is estopped to retain the payment of the checks. Central urges that GFC would be unjustly enriched if permitted to retain the proceeds of the check in the amount of $28,300.

When Central opened for business on July 19, 1957, the credit balance of Clausi was $24,733.61. A deposit of $23,943 was thereafter made by Clausi, in which were two checks of GFC drawn on First National for $20,700 and $2,068.

[1] "A check or draft received for deposit or collection by a solvent payor or drawee bank shall not be deemed paid or accepted until the amount is charged to the account of the maker or drawer unless, though not so charged, such item is retained by the drawee or payor bank longer than the end of the business day following its receipt."

This deposit was marked by an officer of Central "No Hold" which meant that Clausi was permitted to draw against uncollected items. On Saturday afternoon, July 20, an officer of Central learned that Clausi was in financial trouble, Central asserts that GFC had this information on the preceding afternoon. On Monday, July 22, Central presented to First National the two GFC checks and learned that payment was stopped. Central attempted to return the $28,300 check. Representatives of Central and GFC had a discussion with respect to Clausi on Monday afternoon. A representative of GFC was in possession of $46,800 of Clausi's checks on Central. These were placed in an account in Central with the understanding that such of them as were good would be paid. On July 23, Tuesday, Central paid GFC two checks, one for $3,000 and another for $8,300, and charged them to the Clausi account. The balance in the Clausi account, as shown on Central's books which permitted the payment of these two checks to be made, resulted from the acceptance by First National of the return of the $28,300 check with a corresponding credit by First National to Central. Central assumed that it had made a valid refusal of payment and a valid return of the $28,300 check. Central took the position before the district court and takes the position here that GFC is estopped from retaining the proceeds of the two checks aggregating $11,300 because of its superior information, and that it should be required to repay the $11,300 to Central under the doctrine of unjust enrichment.

The district court, following the decision of this Court on the former appeal, held that Central, by failing to return the $28,300 within the time permitted by the statute had made payment of the check. The district court held that because of the crediting to Clausi of the checks in the aggregate amount of $22,768, Central did not become a holder in due course upon the return of these checks with payment stopped. The district court rejected the claims put forward by Central of estoppel and unjust enrichment. Judgment was entered for GFC against Central for $28,300 with interest. Relief on the counterclaims was denied. On appeal the district court's findings and conclusions are challenged and the district court's failure to make additional findings is asserted to be error.

The check of $28,300, which Central paid by its retention of it beyond the period permitted by the statute, was drawn upon Central by Clausi. The case was not one where a bank had permitted its depositor to draw against uncollected items drawn upon another bank. In the definitions of Section 191 of the Negotiable Instruments Law it is provided that " 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Fla. Stat.Ann. § 674.01, F.S.A. Section 52 states that:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Fla.Stat.Ann. § 674.54, F.S.A.

■■ The drawee of a check payable to another is neither payee nor indorsee. It is not a holder and hence not a holder in due course. State Planters Bank & Trust Co. of Richmond, Va. v. Fifty-Third Union Trust Co., 56 Ohio App. 309, 10 N.E.2d 935; Kansas Bankers Surety Co. v. Ford County State Bank, 184 Kan. 529, 338 P.2d 309, 75 A.L.R.2d 600; Shammas v. Boyett, 114 Cal.App.2d 139, 249 P.2d 880; Kuhns v. Live Stock National Bank, 137 Neb. 459, 289 N.W. 893; Woodward v. Savings & Trust Co., 178

N.C. 184, 100 S.E. 304, 5 A.L.R. 1561; Farmers & Merchants Bank v. Bank of Rutherford, 115 Tenn. 64, 71, 88 S.W. 939, 112 Am.St.Rep. 817; American Hominy Co. v. Millikin National Bank, D.C., 273 F. 550; 10 C.J.S. Bills and Notes § 303, p. 785; 8 Am.Jur. 112, Bills and Notes § 375. To support its contention that it is a holder in due course, Central has cited Lowrance Motor Co. v. First National Bank, 5th Cir. 1956, 238 F.2d 625, 59 A.L.R.2d 1164; Universal C. I. T. Credit Corporation v. Guaranty Bank & Trust Co., D.C., 161 F.Supp. 790; First National Bank of Auburn v. American Finance Corp., 267 Ala. 479, 103 So. 2d 35; State Planters Bank v. Courtesy Motors, Inc., 250 N.C. 466, 109 S.E.2d 189; South End Bank & Trust Co. v. Nasin, 147 Conn. 215, 158 A.2d 591. These are cases where a bank had given credit to its customer and permitted him to draw against a check drawn upon another bank while it was in collection channels. In such cases, where the check was subsequently dishonored, the bank of deposit was held to be a holder in due course. The cases cited do not sustain the position that a drawee bank, which has paid a check, may claim to be a holder in due course with a right of recovery against the payee or indorsees of the check. Central is not a holder in due course of the checks paid by it. If it is to recover against GFC it must be upon some other theory.

■ Central knew, when it made payment to GFC, that a part of the balance of Clausi on its books had resulted from the credit of uncollected checks upon which payment could be, as it was, stopped. Central must be presumed to have known that the retention of the $28,300 check beyond the period of the statute would result in its being paid, even though Central believed otherwise until the decision of this Court on the prior appeal. The action of First National in accepting the return of the $28,300 check from Central after the statutory period for its return had expired did not bind or raise an estoppel against GFC, whatever its effect may have been as between Central and First National. The doctrine of estoppel applies where, by words or conduct, one person willfully, culpably or negligently causes another to believe in the existence of a state of things by which the other may be induced to act so as to change his previous position to his injury. New York Life Insurance Co. v. Oates, 141 Fla. 164, 192 So. 637. An essential element of estoppel is that the party asserting it show a change of position made in reliance upon statements or conduct of his adversary. L. B. Price Mercantile Co. v. Gay, Fla., 44 So.2d 87. See also United States Casualty Co. v. Godwin, 158 Fla. 64, 27 So.2d 612; Steen v. Scott, 144 Fla. 702, 198 So. 489; New York Life Insurance Co. v. Oates, 122 Fla. 540, 166 So. 269. No act done or words spoken by GFC estop it from the retention of the payments which it has received.

■ In considering whether Central has any right of restitution it must be kept in mind that the check for $28,300 was deemed paid at the close of business on Friday, July 19, and the checks for $11,300 were paid by cash or its equivalent. In Florida, as in most jurisdictions, there is recognition of the general rule that an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage. Moss v. Condict, 154 Fla. 153, 16 So.2d 921; First State Bank of Fort Meade v. Singletary, 124 Fla. 770, 169 So. 407; Southern States Power Co. v. Pittman, 122 Fla. 758, 165 So. 893; Sears v. Gulf Refining Co., 113 Fla. 714, 143 So. 759, 152 So. 1; Citizens' Bank of Ft. Myers v. First National Bank of Waynesboro, 101 Fla. 908, 132 So. 478; Gilmore v. Texas Co., 100 Fla. 169, 129 So. 587; Liddon v. Hatton, 64 Fla. 361, 60 So. 340; Cullen v. Seaboard Air Line Railway Co., 63 Fla. 122, 58 So. 182. This rule, however, does not permit a recovery of the amount paid by a bank upon its customer's checks under a mis-

taken belief that the customer had sufficient funds to his credit to cover the checks where, as here, no fraud is charged and no misrepresentation or overreaching is shown. The rule has been thus set forth:

"A bank, which honors and pays a note, draft, or check of one of its customers upon his order, in the mistaken belief that the credit balance of that customer is larger than it in fact is, or in the futile hope or mistaken belief that checks or notes which the bank has credited to the account of that customer will be paid in the regular course of business, is estopped, as against the owner of such paid note, check, or draft, from revoking or avoiding such payment on account of such mistake or futile hope: (1) Because of the intolerable delay, uncertainty, and confusion that would result in commercial transactions, if the validity of such payments were to remain in doubt until such possible mistakes should be discovered and corrected; (2) because such a bank may know the state of its own accounts, and it can make such mistakes only through its own laxity or negligence, or its own assumption of the risk of future payments; and (3) because the owner of the note, check, or draft has no means of knowing the state of the customer's account." Security National Bank of Sioux City, Iowa v. Old National Bank, 8th Cir. 1917, 241 F. 1, 8.

The principle so announced was repeated in Hayes v. Tootle-Lacy National Bank, 10th Cir. 1934, 72 F.2d 429. See Citizens Bank of Norfolk v. Schwarzschild & Sulzberger Co., 109 Va. 539, 64 S.E. 954, 23 L.R.A.,N.S. 1092. Other cases are collected in the annotation in 114 A.L.R. 382. In the Restatement the rule is thus stated:

"The holder of a check or other bill of exchange who, having paid value in good faith therefor, receives payment from the drawee without reason to know that the drawee is mistaken, is under no duty of restitution to him although the drawee pays because of a mistaken belief that he has sufficient funds of the drawer or that he is otherwise under a duty to pay." Restatement, Restitution § 33.

The qualifications stated in Restatement, Restitution § 34 are not here applicable.

 There is no showing that GFC had any knowledge of facts which placed it in a position where it was enabled to enrich itself unjustly to the injury of Central. No factual basis or legal claim is established by Central which permits it to recover upon its counterclaims against GFC by reason of the payment of the checks, or any of them, drawn by Clausi and paid by Central to GFC. The judgment of the district court is

Affirmed.