**GENERAL FINANCE CORPORATION,**
Plaintiff,

v.

**MILWAUKEE WESTERN BANK,**
Defendant.

No. 61–C–314.

United States District Court
E. D. Wisconsin.

Oct. 26, 1965.

T. L. Tolan, Jr., and Samuel J. Recht, Milwaukee, Wis., for plaintiff; Brady, Tyrrell & Bruce, Milwaukee, Wis., of counsel.

13. Orange Nat'l Bank v. Southern Pac. Co., 162 La. 223, 110 So. 329 (1926).

Maxwell H. Herriott, Lester S. Clemons and James A. Urdan, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

This is an action to recover the face value of certain checks and of a draft of which plaintiff was the payee and acceptor, respectively. Jurisdiction is based on diversity of citizenship. The question of damages has been severed, and the liability questions have been submitted on cross motions for judgment and on stipulated facts. On oral argument, counsel for the parties agreed that the stipulation of facts covered all facts relevant and material to the cause.

Plaintiff, General Finance Corporation, hereinafter referred to as "General," is a Delaware corporation having its principal place of business in the State of Illinois. It is duly licensed to do business in the State of Wisconsin.

Defendant, Milwaukee Western Bank, hereinafter called "Western," is a banking corporation, organized and existing under the banking laws of the State of Wisconsin. Its place of business and office as a bank is located more than one mile from the Milwaukee Clearing House, of which it is an associate member.

Jewel Motor Sales, hereinafter called "Jewel," was a partnership engaged in the sale of automobiles in Milwaukee, Wisconsin. It was a depositor of Western at all times relevant to this action and was adjudicated bankrupt in August of 1961. The First Wisconsin National Bank of Milwaukee, hereinafter referred to as the "First," maintains a bank in Milwaukee, Wisconsin. It is a member of the Milwaukee Clearing House.

CLAIMS 1 AND 2—THE CHECKS

Liability as to these claims is predicated on the provisions of the Wisconsin Bank Collection Code, Section 220.15(3), Wisconsin Statutes, the "Deferred Posting" provision, in effect at the time of the transactions. Involved are two groups of checks totalling $46,700 and $44,400, respectively. The sequence of events in respect to the two groups is similar, except that the occurrences involving the second group took place one business day later than those of the first group, which occurrences are set forth here.

The checks, of which General was the payee, Jewel the payor, and Western the drawee bank, were dated November 6, 1960. General deposited these checks with the First and was given credit therefor in its checking account on November 9, 1960.

On November 10, 1960, at 9:30 a. m., the First presented the checks to Western by messenger at the first clearing of the Milwaukee Clearing House. The checks were then brought to Western about 10:00 a. m. on that day. In accordance with the deferred posting practice of Western, the checks were posted to the Jewel account on November 11, 1960, as of November 10, 1960. The posting resulted in substantial overdrafts, and the checks were reversed back out and marked "RT" for return.

Between 10:00 and 11:30 a.m. on November 11, before Western knew that an overdraft entry would result from the deferred posting, Jewel came to Western and stopped payment on the November 6, 1960, checks.

About 4:00 p.m., and before the close of business on November 11, 1960, the day after Western received the items, it notified the Return Item Department of the First by telephone that payment on the November 6, 1960, checks had been stopped and that they would be returned on November 14, 1960, the next business day. Western further inserted the checks in a "Return Item" envelope addressed to the First, which was immediately placed in the vault of Western with all other Clearing House items to be exchanged at the 9:30 a.m. clearing of the next business day.

The First did not object to the proposed return. No written notification was given, but the checks were in fact returned to the First on November 14, 1960, the next business day, and the return was accepted by the First. Upon return of the checks, the First cancelled the credit

it had previousy extended to plaintiff thereon.

The manner of return of these items was usual and customary and in accordance with the Clearing House rules then applicable to Milwaukee banks located, like Western, more than a mile from the Clearing House.

The Wisconsin Deferred Posting law, Section 220.15(3) of the Wisconsin Statutes, insofar as applicable here, provides as follows:

> "(3) Demand items. (a) In any case in which a bank receives, other than for immediate payment over the counter, a demand item payable by, at or through such bank and gives credit therefor before midnight of the day of receipt, the bank may have until midnight of its next business day after receipt within which to dishonor or refuse payment of such item. Any credit so given, * * * may be revoked by returning the item, * * *; provided that such item * * * is dispatched in the mails or by other expeditious means not later than midnight of the bank's next business day after the item was received. * * *"

The question presented in Claims 1 and 2 is whether the manner of revocation followed by Western, that is, telephone notification to the First, placing the checks with items to be returned to the Clearing House on the next business day after receipt by Western, followed by presentment to the First by Clearing House messenger on the following morning, constitutes revocation of credit in respect to the Jewel checks in compliance with Section 220.15(3), Wisconsin Statutes. Are the Jewel checks to be deemed "dispatched in the mails or by other expeditious means not later than midnight of the bank's next business day" after receipt of the items? The consequence of failure to revoke is, of course, that the bank must be deemed bound to pay the items.

The Florida and Texas statutes construed and applied in Central Bank and Trust Company v. General Finance Corporation, 297 F.2d 126 (5th Cir.1961), General Finance Corporation of Florida v. Central Bank and Trust Company, 264 F.2d 869 (5th Cir.1959), and City State Bank v. National Bank of Commerce, 261 S.W.2d 749 (Tex.Civ.App.1953), respectively specified the particular manner in which a bank may be bound to pay or for revocation of credit. There was no provision for an optional, undefined method of revocation as found in the language of the Wisconsin Statutes—"dispatched * * * by other expeditious means." In these cases failure to comply with the literal statutory terms resulted in liability. The decisions in these cases furnish no authority as to the question here presented.

A pertinent construction of an Indiana statute, similar in wording to the Wisconsin law, is found in First National Bank of Elwood v. Universal C.I.T. Credit Corporation, 132 Ind.App. 353, 170 N.E.2d 238 (1960). There the drawee bank received the item on Monday, February 8, 1954. By letter deposited in the mail on or before February 9, it advised the forwarding bank of its acceptance of the item, and then, on Saturday, February 13, 1954, returned it by mail for revocation of credit. Thus, revocation was attempted five days after receipt of the item and four days after the period provided by the statute. After considering the history and purpose of the Deferred Posting Act, the Court comments on page 244 of 170 N.E.2d:

> " * * * It is difficult to conjure any logical process of reasoning which, under the facts made apparent here, leads inescapably to any other conclusion that a bank which fails to embrace the protective provisions afforded by the Deferred Posting Act by not revoking its provisional credit or returning the item within the time and substantially in the manner provided in the Act must be held to thereby bind itself to pay the item."

The court further notes that the case was not "elaborately tried," and that no

evidence concerning any possible custom of the Indiana banks relative to the matter in issue was offered or relied upon.

Consideration of the facts of the instant case in light of the language of the applicable Wisconsin statute leads to the conclusion that Western revoked credit and is therefore not bound to payment of the Jewel checks.

■ The parties have expressly agreed that the placing of the checks with the Clearing House items prior to midnight of the business day following receipt and presentment thereof to the forwarding bank, the First, on the following morning at the Clearing House resulted in actual receipt by the First at a time no later than receipt would have been had if Western had dispatched the checks in the mails as provided in the statute. Western, unlike the drawee bank in the Indiana case, did not notify the forwarding bank of its acceptance, but instead took the precaution, not expressly called for in the statute, of advising the forwarding bank that it was revoking credit. The method followed here was tantamount to dispatch as contemplated by the statute.

Further, the method followed by Western in the revocation of credit as to the Jewel checks was in accordance with the prevailing Clearing House rules and practice in the community. Thus, attainment of certainty of negotiable paper is not jeopardized by the construction of the statute applied here.

It is also contended that literal compliance with the manner of revocation set forth in the statute is required because Wisconsin, unlike Indiana, failed to enact the further provision of the Model Act allowing variation of the revocation process by consent or agreement. Any conclusion as to the intent of the Wisconsin legislature in this omission is speculative. The legislature may have believed that the phrase "dispatched in the mails or by other expeditious means" may have rendered the additional provision unnecessary, or it may have been of the opinion that such variation was not desired. In view of the court's construction of the statute as comprehending the method of revocation employed here, the legislative intent as to the omission is not relevant. The Indiana case also appears to have been decided without reference to the variation provision of the Act.

Consideration of additional defenses raised by Western is unnecessary in view of the court's determination that Western effectively revoked credit as to the Jewel checks in compliance with the requirements of Section 220.15(3).

CLAIM 3—THE DRAFT

On November 9, 1960, Jewel drew a sealed envelope draft with enclosed trust receipts on General, which draft was "Payable Through" the First in the amount of $30,500, and deposited the draft together with other checks with Western.

On November 10, 1960, Western posted the amounts represented by this deposit to Jewel's account as of November 9 and paid various checks with the proceeds, including four checks payable to General in the total amount of $23,441. General received these payments.

On November 11, 1960, Western delivered the envelope draft to the First for payment at the 9:30 a. m. clearing. General accepted the draft about noon of this day.

Neither Western nor General knew at the time of deposit or acceptance that the underlying trust receipts were forged.

General bases its claim against Western on a purported breach of fiduciary duty under the Wisconsin Bank Collection Code, particularly Section 220.15(2), Wisconsin Statutes. It claims that it would not have accepted the draft had it known of the pattern of Jewel's overdrafts as reflected by Jewel's checking account statements for the preceding

ten months' period and of Jewel's stop payment order on the November 6, 1960, checks. Western received the stop payment order on November 11, between 10:00 and 11:30 a. m., with Jewel's explanation that it had suspended the "floor plan method."

General contends that Western was its subagent for purposes of the collection of the Jewel checks on which Jewel stopped payment, and that Western, as subagent, owed it the duty of immediate notification of this order. By "withholding" this information, Western is claimed to have served its own interest. Having made irrevocable payment on the unaccepted envelope draft, Western purportedly protected itself by waiting until acceptance on the draft had been secured before notifying the acceptor, General, concerning Jewel's order to stop payment on the checks.

The Wisconsin Bank Collection Code, Section 220.15 of the Wisconsin Statutes, does not expressly designate a drawee bank as the subagent for collection of the payee. Differing conclusions may be drawn from the language of the various provisions. Compare, for example, Subsections (2) and (13) (a) and (c) of Section 220.15.

Assuming for purposes of this decision that Western was General's subagent for collection as to the Jewel checks, it does not follow that it was under duty of immediate notification, or that it breached any duty it may have owed General under the circumstances disclosed here.

 Western received knowledge that Jewel had stopped payment on the November 6 checks between 10:00 and 11:-30 a. m. on November 11, 1960. Jewel's explanation for this action, that is, suspension of the "floor plan method" of financing, on its face would not have alerted Western to Jewel's precarious financial condition or to the fact that it might have drawn a draft with forged security. Western could assume that General would have been aware of the suspension of this method by Jewel. The overdraft resulting from posting of these checks also did not suffice to alert Western since during the preceding nine months' period Jewel had always covered overdrafts by subsequent deposits. Under these circumstances, Western is not chargeable with knowledge that either its own or General's interests may have been in jeopardy during the interval ·of one-half to, at most, two hours between the stop payment order of the Jewel checks and the acceptance of the draft by General. Failure to notify General by noon of November 11, 1960, in time to prevent acceptance, does not constitute breach of any duty owed by Western to General and cannot be ascribed to any disloyal conduct by Western.

The cases cited by plaintiff are not controlling here in that liability was predicated on the agent's disregard of express instructions and on negligence in failing to comply with customary practice in the transactions. See Grant County Deposit Bank v. McCampbell, 194 F.2d 469, 31 A.L.R.2d 909 (6th Cir. 1952), and Grant County Deposit Bank v. Greene, 200 F.2d 835 (6th Cir. 1952).

Plaintiff has failed to establish that Western breached any duty owing to it. Nor has it been shown that Western was negligent in the transaction to support liability as to the face value of the draft.

The Court hereby adopts the parties' stipulation of facts as its findings of fact. Further findings of fact and conclusions of law are as set forth in the foregoing opinion in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The clerk is hereby directed to enter an order denying the motion for judgment of plaintiff General Finance Corporation and granting the motion of defendant Milwaukee Western Bank for judgment of dismissal of the action and for its costs and disbursements.