**M. J. MOSS, JR. v. HAROLD V. CONDICT**

16 So. (2nd) 921
January 7, 1944
Rehearing Granted January 21, 1944

June Term, 1943
Special Division B

*George P. Garrett,* for appellant.

*Whitfield, Wright & Whitfield,* for appellee.

THOMAS, J.:

This appeal was taken to review an order of the circuit judge granting a motion for a new trial after the jury had returned a verdict favoring the plaintiff.

The declaration contained four common counts, but in the course of the trial two of them were abandoned. There remained one for "work done and services rendered by the . . . plaintiff to the defendant . . . ", and another for "money payable by the . . . defendant to the . . . plaintiff, for money received by the defendant for the use of the plaintiff." To all the counts there had been filed the plea that the defendant

"never was indebted as alleged." Attached to the original pleading and made a part of each count was a bill of particulars describing the demand as one for: "One-half of commission earned in sale by Bearhead Groves, Inc., to Ralph E. Day and Albert Delay, of the C. L. DeFoor grove, . . . for a purchase price of $37,500.00. Total commission of $3750.00 and one-half thereof . . . $1875.00."

The action, therefore, was between two real estate brokers for the recovery from one by the other of one half of the commision paid for the sale of a certain tract of land owned by Bearhead Groves, Inc., a corporation.

From the testimony given by the plaintiff himself we glean these facts upon which he relied: He was secretary of the corporation and also a real estate broker having "exclusive listing" of the land for sale. The transfer was actually negotiated by the appellee upon information furnished him by the appellant. According to a custom, which was claimed to prevail in Orlando, that a broker holding the exclusive right to sell property is entitled to one half of the commission if the property is sold by another, he was entitled to share equally in the fee.

In the trial the appellant admitted he performed no services in effecting the sale of the property, therefore, obviously, the first count, for work done and services rendered, was not sustained. In his brief he observes that his case "as it went to the jury [was] based on the third count," the one for money had and received. The question for determination, then, is narrowed to the one whether this count placed in issue by a plea of "never was indebted as alleged" was a proper foundation for the testimony we have abstracted.

We think the appellant stated well the gist of his cause of action when he wrote in his brief that his claim was "grounded on an implied contract to divide fees based upon a local custom for such division." This thought suggests the reason for the eventual ruling of the circuit judge. He granted the motion for new trial upon three grounds, among them the one that the "verdict is contrary to the law governing said case." This statement by the appellant and the

reason given by the trial judge, both considered in the light of counsels' argument and the judge's observations when a motion was made for a directed verdict at the close of the plaintiff's testimony, give rise to the question: Can a plaintiff present such a claim via a common count for money had and received?

This form of declaration has been broadly applied and, historically, it was designed to give relief because of the restricted scope of the usual common law pleading. This Court has on many occasions recognized its wide application. In Cullen v. Seaboard Airline R. Co., 63 Fla. 122, 58 So. 182, it was said that the action lay "for money paid by mistake or upon consideration which has failed, or for money obtained through imposition, express or implied, or extortion or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under these circumstances." In that pronouncement of the extensive scope of facts presentable under this pleading, however, it was said by way of introduction that it obtained in all cases where money had been given "which ex aequo et bono [the defendant] ought to refund," and, further, that it was available in circumstances where there was an obligation "by the ties of natural justice to refund the money." Of similar import was the language used in Ivey v. Southern States Power Co., 128 Fla. 345, 174 So. 834: "Such count may be proved by any legal evidence showing that the defendant has possession of the money of plaintiff which he ought to pay over." In Willis v. Fowler, et al., 102 Fla. 35, 136 So. 358, the effect of the pleading was compared to a bill in equity, and indeed it seems to be generally regarded by the authorities that its original purpose has been so extended that now in such an action at law there may be accomplished much which originally could have been secured only in a court in equity.

Long ago, in a decision of the Supreme Court of Michigan, Moore v. Mandlebaum, 8 Mich. 433, this rule for testing the propriety of such a count was announced: ". . . as a general rule, where money has been received by a defendant under any state of facts which would, in a court of equity, entitle

the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action." This statement of the law has lately been recognized by the compilers of American Jurisprudence, 4 Am. Jur., Assumpsit, Page 508.

If the origin and purpose of this form of pleading are borne in mind, even despite the inclination of the courts to extend the latitude of the pleading so that it may in many cases be substituted for a proceeding in chancery, we still have difficulty in seeing how it is appropriate in the present controversy. It is clear that the plaintiff made no claim against any party to the transfer. It is not established that the one who paid the fee recognized him, as well as the defendant, as a broker to share in the proceeds; nor is the one who paid the money a party to the suit. The plaintiff has proceeded on the simple theory that, inasmuch as the sale was consummated and the fee earned by the defendant, part of it should go to him because of a custom among real estate brokers in the locality. It seems to us that the crux of the case is the implied promise of one broker, because of that custom, to divide the fee. Of course, had the person paying the fee dealt with both alike and delivered the money to one of them, knowing that he owed both, it is plain that the count would be proper because in that event money earned partly by one for services rendered by both would have been received by the other.

Here there seems to have been no privity between the plaintiff and the buyer,—or between him and the seller so far as this transaction is concerned. The plaintiff dealt entirely with the defendant in furnishing him the information relative to the property being for sale, the amount asked by the seller, and the like. The claim is not, as we have said, for services rendered. Custom, so plaintiff asserts, is the basis for his demand that he receive money, not paid to the defendant for him, but earned by the former. It is difficult to see how the defendant could be said to hold any specific fund which in equity and good conscience he should deliver to the plaintiff. The one paying the commission gave no money to the defendant to be transferred by him to the plaintiff. He

simply discharged a debt. The plaintiff's claim is directly against the defendant and he has had none against the one with whom the latter dealt.

We cannot conceive how it would have been fitting for a court of equity to undertake to decree that a portion of the commission should be paid by the defendant to the plaintiff, nor have we discovered any equitable features in the plaintiff's claim. It was no more than a debt, if the plaintiff is eventually able to prove the custom.

We are always reluctant to interfere with an order by a trial court granting a motion for new trial, and we are not inclined to disturb the ruling here. The matter is not finally adjudicated and nothing we have said will prevent ultimate determination of it on the merits, which we think may be accomplished in complete harmony with these views and the ruling of the trial judge as we understand it, provided there is a revision of the pleadings.

Affirmed.

BUFORD, C. J., and ADAMS, J., concur specially.

SEBRING, J., concurs.

BUFORD, C. J., concurring specially:

I concur in the judgment of affirmance but reach my conclusion only upon the grounds stated in the majority opinion prepared by Mr. Justice THOMAS, but also because of the following facts which I find reflected in the record.

As I read the record, the property out of which this controversy arose was formerly owned by one DeFoor and while it was so owned Moss had an exclusive listing on the property and, while it was so owned, Mr. Moss had some conversation with Mr. Condict in regard to the sale of the property at which time Mr. Condict was advised that Mr. Moss had such listing. Later the property was sold by DeFoor to Bearhead Groves, Inc., a corporation of which Mr. Burman was president and Moss was secretary. Later Mr. Condict contacted the purchasers to whom he later sold this property. After Mr. Condict contacted these purchasers he contacted Mr. DeFoor and found that the property had been sold to Bearhead Groves, Inc. Whereupon, he contacted Mr. Burman

and procured a listing with the terms of the sale. When he asked for an abstract and some other data with reference to the property Mr. Burman directed him to Mr. Moss to get the abstract and information. The information was gotten by one of Mr. Condict's salesmen from Miss Newman, an employee in Mr. Moss' office.

I find nothing in the record to show that Condict had any knowledge or information that Moss was handling the property as a broker after it was purchased by the corporation of which he, Moss, was the Secretary. I find nothing in the record showing that Moss made any effort to put Condict on notice that he had an exclusive listing or was expecting any part of the commission which would flow from this sale from Bearhead Groves, Inc., to the purchasers produced by Condict.

It is my view that when the grove was sold by DeFoor to Bearhead Groves, Inc., the exclusive listing theretofore held by Moss was terminated.

It further appears to me that Condict procured his authority and terms of sale from the president to the owner, Bearhead Groves, Inc., and was not advised by anyone that Mr. Moss was in position to claim, or would claim, any part of the commission on said sale and that he did not have such information until he had closed the transaction and was paying over the purchase price for the property under the terms of the sale.

It follows that, in my view, the plaintiff entirely failed to produce proof to sustain a verdict and judgment in his favor.

PER CURIAM:

A rehearing having been granted in this cause and the cause having been further considered upon the record and briefs for the respective parties, Mr. Chief Justice BUFORD and Mr. Justice ADAMS adhere to the opinion prepared by the Chief Justice filed January 7, 1944 and Justices BROWN, CHAPMAN, THOMAS and SEBRING adhere to the opinion prepared by Mr. Thomas, filed herein on January 7, 1944, therefore the judgment of the circuit court is.

Affirmed.

BUFORD, C. J., BROWN, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.

TERRELL, J., not participating.