100 So.2d 171 (1958)
Randolph CALHOUN, Appellant,
v.
N.R. CORBISELLO et al., Appellees.
Supreme Court of Florida.
January 31, 1958.
Rehearing Denied February 28, 1958.
*172 Donald C. McClelland, Jr., Sarasota, for appellant.
Worth Dexter, Jr., and Dexter, Conlee & Bissell, Sarasota, for appellees.
THOMAS, Justice.
The appellant was unsuccessful in his action against the appellees by which he undertook to recover the amount paid by him on an option to purchase all the outstanding stock held by the individual appellees in the appellee-corporation, and the money spent by him in promoting the corporation and clearing land owned by it between the time the option was executed and the time appellant and the individual appellees parted company.
Under the terms of the option appellant and another person, who was not a party to the litigation and who will not further be mentioned, were privileged to buy the stock for $80,000. One-tenth of this amount was to be paid by 31 January 1951 and there was no denial of the fact that this money was delivered to one of the appellees in exchange for a receipt evidencing payment.
What happened afterwards is much in dispute.
The option was to extend from its date, 15 January 1951 until 31 January 1951, so when the $8000 amount was paid, the option was exercised by the appellant. Upon payment the appellant was to be furnished an abstract of title of the property owned by the corporation and was to have one week to examine it. Later the individual appellees agreed that the "closing date" be extended 90 days from the day the agreement was executed without any effect, however, on any of its other terms.
The record is voluminous and the ramifications of the transaction innumerable but what we have written gives sufficient background of the litigation. The appellant in his brief advises us that in spite of the proportions of the record, the facts may be stated with relative simplicity and gives this account: What he construes as a "ninety-day option" was given and about 30 days before it expired  this is evidently a reference to the closing date as extended  the appellant learned of a dispute among the stockholders which would make performance impossible. As soon as this situation came to light and the stockholders "recognized their inability to perform * * * certain of the individual [appellees] promised to return to plaintiff his money and to see that he suffered no loss * * *." The latter promise, according to appellant's version, was supported by forbearance to sue inasmuch as he had at that time a right of action against appellees. He refers to the tender by the appellees of the stock as being "purported" and ends his analysis with the statement that this action is one only for "money had and received."
There was evidence on behalf of the appellant that such promises were made but it was stoutly refuted and there was a sufficient amount of testimony to the contrary, which the trier of the facts obviously believed to justify the decision he reached. Doubtless he concluded that the effort and money expended were appellant's contribution to an enterprise which he expected eventually to control.
*173 The position with reference to the information that the stock could not be delivered is in the same category. There was testimony that the appellees attempted to deliver the stock on the 91st day, the 90th day having fallen on Sunday, but appellant could not be found. He now, as he did in the trial court, challenges the manner in which the tender was made but the inference properly deducible is that an earnest attempt was made so to deliver and there is a dearth of testimony that the appellant intended to pay the balance of $72,000 on stock which he genuinely wished to obtain.
As we see the case from our study of the record, there was ample reason for the judge to decide that there was no promise of reimbursement and that there was no such statement of inability to produce the stock as would warrant the appellant in feeling that he was no longer obliged even to attempt to pay the money and receive the stock. Subsequent events demonstrated that the appellees were able to deliver for they did actually take the stock to places where they undertook to locate the appellant, but he could not be found. They tried without avail to deliver it to two persons in appellant's office, one of whom was appellant's secretary.
We find no occasion to explore the law with reference to the elements of an effective tender because we think that what was attempted demonstrated the fallacy of the argument that appellant was relieved from doing anything from even being around. We have not discovered in the agreement any stronger obligation on the part of the appellees to deliver than on the part of the appellant to pay. And this, to repeat, was not a suit for specific performance, but one for money had and received, or to state it otherwise, for the recovery of money which the appellees, in good conscience, should pay to appellant. Moss v. Condict, 154 Fla. 153, 16 So.2d 921.
The case was tried before the circuit judge without intervention of a jury, nevertheless his conclusion had, under our decisions, the weight of a verdict. First Atlantic National Bank of Daytona Beach v. Cobbett, Fla., 82 So.2d 870.
We are convinced that the whole controversy revolved around the basic facts we have outlined and that the record does not support the view that the judge either misapprehended the weight of the evidence, taken in its entirety, or that his choice of the witnesses he believed should be disturbed.
Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS and DREW, JJ., concur.