Robert M. HENDRY, Jr., Appellant,

v.

GRANGE MUTUAL CASUALTY CO.,
Appellee.

GRANGE MUTUAL CASUALTY CO.,
Appellant,

v.

Robert M. HENDRY, Jr., Appellee.

No. 22331.

United States Court of Appeals
Fifth Circuit.

Feb. 14, 1967.

Rehearing Denied March 20, 1967.

Joseph D. Farish, Jr., Farish & Farish, West Palm Beach, Fla., for appellant.

William H. Pruitt, Fisher, Prior, Pruitt & Schulle, West Palm Beach, Fla., for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and FISHER, District Judge.

FISHER, District Judge:

This is an insurance policy case involving insurer's failure to defend under an automobile liability insurance contract a suit instituted against its insured, and also the possibility of liability in excess of policy limits thereof where the insurer wrongfully refused to so defend. Federal jurisdiction is based upon diversity of citizenship, plus the requisite amount in issue. Both parties appeal from a final judgment of the district court holding against the insurer, but limiting recovery by the insured to the policy limits plus attorney's fees and costs. We affirm.

The Grange Mutual Casualty Company, defendant below, through its agent, the R. F. Stanford Insurance Company, West Palm Beach, Florida, sold Robert M. Hendry, Jr., plaintiff below, an automobile liability insurance policy which the parties stipulated to have been in full force and effect at all times and for all purposes in issue in this action. The policy contained the following provisions:

"I Coverage A-Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"II Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

"1. *Notice of Accident*—Coverages A, B–1 and B–2. When an accident occurs *written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.* [Emphasis added]

"6. Action Against Company—Coverage A: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Thereafter, on August 22, 1962, Hendry's automobile (insured under the policy) was involved in an accident, in which a minor guest occupant, Katherine Louise Wilson, was injured. The son, Robert Hendry, III, was the driver of

the vehicle at the time of the accident and was also injured.

At the trial, Hendry testified that on Monday following the accident which occurred the previous Wednesday, he personally visited the Stanford Agency and advised some woman office worker about the accident (where it occurred, that there were no witnesses) and that she told him she would notify a Mr. Bennett, the man from whom Hendry purchased the policy, and have him call. Hendry further testified that Mr. Bennett did not get in touch with him but did talk to his sister after plaintiff had permanently left Palm Beach County. Hendry testified that he telephoned the agency on two other occasions but could not recall the exact dates. Testifying further, Hendry disclosed that he moved permanently to Eau Gallie very soon after the accident (at which time he lived in West Palm Beach with his sister) and later, to Daytona.

Marcus Brewer, the step-father of the minor guest occupant who was injured in the accident, testified that he also telephoned the Stanford Agency, within two or three days after the accident, talked to a man in the office and advised him where the accident happened and that there had been injuries to the occupants and damages to the vehicle. This testimony was corroborated by Brewer's wife, his ex-wife and his daughter.

Around October 3, 1962, Grange received a form SR–21 from the Financial Responsibility Division of the Florida State Insurance Commission, regarding the accident. On October 5th Grange sent Hendry a letter informing him of the SR–21 form and enclosing an accident form for Hendry to complete and return. Subsequently, on December 12, 1962, when no reply to the letter of October 5th had been received, Grange advised Hendry that unless the matter was

given immediate attention there would be no alternative but to return the SR–21 form to the state insurance commission and advise the automobile underwriting department accordingly. Shortly thereafter, on December 17, 1962, a summons and complaint were served upon Hendry in an action for personal injuries sustained in the accident by Katherine Louise Wilson. After being so served, Hendry on December 29th forwarded to Grange a partially completed accident report together with suit papers and Grange's letter of October 5th. A notation made by Hendry at the bottom of the letter explained that the accident report had not been returned sooner because Hendry felt no litigation would occur as a result of the accident.

However, Hendry testified that he did not receive Grange's letters of October 5th and December 12th until after he had been served with suit papers because he had permanently moved from his sister's home in West Palm Beach, to which address the letters had been sent. Hendry also testified that he did not see Mr. Bennett until after the suit papers had been served on him, and that he understood Mr. Bennett had been ill during most of the period in question. Grange's claim supervisor testified by deposition that the company does not require a completed accident report before it opens a claim file and that information from which the report is made may come from informal sources such as a telephone call from the insured.

On January 2, 1963, Grange advised Hendry that through failure to promptly report the accident, he had violated the terms of the policy and would consequently have to provide his own defense to the action instituted on behalf of Katherine Louise Wilson. Hendry discussed this matter with Mr. Bennett of the Stanford Agency, who told plaintiff he would write the company.[1] When the

---

1. Mr. Hendry testified as to a conversation between him and Mr. Bennett, the agent of Grange Mutual, as follows: "He (Bennett) said they would jump on some technicality and try to get out of pay-

ing it, but he said he was pretty sure, and he would write them and get them straight on the facts and they would defend it, but they didn't." (TR.71)

company refused to change its position, Hendry procured independent counsel. The suit instituted on behalf of Katherine Louise Wilson proceded to trial and resulted in a verdict of $20,934.30 against Hendry. The present litigation was then instituted by Hendry seeking damages resulting from Grange's failure to defend.

At the conclusion of all the evidence, Hendry sought a ruling from the trial court that his recovery was not limited to the policy limits, $10,000.00, but rather, that the proper measure of damages was $20,934.30, together with costs and attorney's fees. Hendry also attempted, at this point to inject the issue of "bad faith" into the case, regarding Grange's conduct in failing to defend the third party action. Hendry requested that the issue be submitted to the jury and that leave to amend the pleadings to include a "bad faith" allegation be granted.

The trial court ruled that a recovery was limited to the policy limits of $10,-000.00 plus appropriate costs and attorney's fees and also refused to permit amendment of the pleadings to include a "bad faith" allegation. Subsequently, the jury returned a verdict in Hendry's favor, upon which final judgment was entered by the court assessing damages at $10,000.00 plus specified interest and attorney's fees.

Hendry by his appeal raised the following points:

(1) Is Grange's liability limited, as a matter of law, to the policy limits?

(2) Should Hendry have been allowed to amend his complaint to include a "bad faith" allegation?

■ ■ As we construe the law of Florida, absent conduct amounting to "bad faith" or negligence "to the extent of bad faith", the policy limits govern insurer's liability for failure to defend, and finding no such conduct we answer point number one "yes".

In Burton v. State Farm Mut. Auto. Ins. Co., 335 F.2d 317 at p. 324, (5th Cir. 1964) it was held,

"In Florida the Insurer is liable for the excess over policy limits for failure to exercise good faith in the defense, handling and settlement of a claim against the Assured. [Citing authorities]"

Tully v. Travelers Ins. Co., 118 F. Supp. 568 (N.D.Fla.1948) holds that negligence "to the extent of bad faith" shown in the refusal to settle can be made the basis to hold insurer liable for the excess over policy limits.

■ The record disclosed no evidence of "bad faith" or negligence "to the extent of bad faith", and the question of a settlement was not involved in the instant case. The District Court was correct in refusing to allow Hendry to amend his complaint to include a "bad faith" allegation, and point number two is answered "no".

The following points are raised by Grange's appeal:

(1) Is the evidence sufficient to support the trial court's instruction upon the doctrine of waiver with respect to the notice of accident provision?

(2) Is the evidence sufficient to support the verdict rendered on behalf of Hendry?

We answer both points in the affirmative.

■ The Rule in Florida appears to be that the term "as soon as practicable" as used in the notice provision of the insurance policy means that notice is to be given within a reasonable time in view of all the facts and circumstances of each particular case.[2] Morton v. Indemnity Ins. Co. of North America, 137 So.2d 618 (Fla. 2d Dist.Ct.App.1962) State Farm Mut. Auto. Ins. Co. v. Ranson, 121 So.2d 175 (Fla. 2d Dist.Ct.App. 1960).

---

2. *Accord,* Callaway v. Central Sur. Ins. Corp., 107 F.2d 761, (5th Cir. 1961) (Texas Diversity Case).

All of the Florida cases bearing upon the question of the requirement of notice being given to the insurer seem to be uniform in the proposition that what is a reasonable time depends upon the surrounding circumstances and is ordinarily a question of fact for the jury. Hartford Acc. & Indem. Co. v. Mills, 171 So.2d 190 (Fla. 1st Dist.Ct.App.1965), American Fire & Cas. Co. v. Collura, 163 So.2d 784 (Fla. 2d Dist.Ct.App.1964), Employers Cas. Co. v. Vargas, 159 So.2d 875 (Fla. 2d Dist.Ct.App.1964).

■ Whether notice was given "as soon as practicable" in view of all of the facts and circumstances of the instant case and whether there was a waiver of written notice were certainly questions of fact to be determined by the jury, and the able trial Judge was correct in submitting these issues to the jury in his well worded charge.[3]

■ From a careful review of the record, we believe the evidence was sufficient to justify the jury in finding that notice was given "as soon as practicable" in view of all the facts and circumstances, to-wit, the defendant through its authorized agent, the Stanford Insurance Company had actual notice of the accident within three days after the occurrence and had actual notice from the insured within five days after the accident; and had written notice from the State of Florida through the Financial Responsibility Division a

3. "Now, members of the jury, in this regard I charge you that the term 'as soon as practicable' means within a reasonable time after the accident under all of the attendant circumstances then existing.

"I charge you that in determining whether a written notice was given the defendant as soon as practicable, you should consider the reasonableness of the party's conduct under those attendant circumstances.

"The purpose of the written requirement should also be considered by you, and all of the surrounding facts and circumstances in the case which bear upon that particular issue.

"Now, what is the purpose in the insurance contract of the requiring of a written notice. The purpose of this provision is to enable the insurance company to evaluate its rights and its liabilities, to afford it an opportunity to make a timely investigation and to prevent any fraud or other imposition of any kind upon it.

"Now, after you have considered all of the evidence in this case if you find that written notice was given to the defendant as soon as [175] practicable, after this accident which happened on August 22, 1962, then you should return a verdict for the plaintiff. But if, on the other hand, after you have considered all of the evidence in the case you find that written notice was not given as soon as practicable, then you should return a verdict for the defendant—unless you should also find that the defendant has waived the written notice requirement of the policy.

"Now, members of the jury, the doctrine of waiver, as I am now discussing it,

applies when a party has knowledge of a particular right which it has under a contract and with that knowledge in some way communicates to the other party to the contract an intention to relinquish or surrender that right.

"In other words, if in this case the defendant acted through any one of its authorized agents, who was acting with knowledge of the attendant circumstances, did in some way induce the plaintiff to believe that written notice of this accident would not be required or that such notice could be furnished at some later date, then you could find that the defendant waived the notice requirements of the policy; and if you so find, the Court charges you that the plaintiff's [176] failure to give the notice as soon as practicable would not bar his right to bring this suit.

"Therefore, if after you have considered all the evidence you find that the plaintiff did give written notice of the accident as soon as practicable, after the accident, to the defendant through one of its authorized agents, who was then acting with knowledge of all the attendant circumstances, or if this agent did in some way induce the plaintiff to believe that the written notice of the accident would not be required, or that it could be furnished at some later date, then you may return a verdict for the plaintiff.

"If on the other hand, you find from all of the evidence that the plaintiff did not give the written notice of the accident as soon as practicable, and that the defendant did not waive said written notice requirements, as I have heretofore defined waiver for you, then you should return a verdict for the defendant."

little over a month after the accident. Also by correspondence of October 5th and December 12th which was received by Hendry on December 17th, the insurer indicated a willingness to comply with its obligations under the insurance policy if a written report was submitted by the insured, and on December 29th the insurer received a partially completed written accident report from Hendry together with a copy of the complaint filed in behalf of the minor, Katherine Louise Wilson. There was testimony from the insurer's claim supervisor that it was not company policy to always require written notice from the insured and that a telephone report was sufficient to justify the company in opening a file on a case.

 We hold that the receipt on December 29th by Grange of the written report, together with the suit papers was timely in line with all of the above circumstances. From the standpoint of the insurer having an opportunity to make an investigation of the accident and to file an answer to the claim, Grange could not successfully contend that it had been prejudiced in any way by the failure of the insured to file a written accident report sooner than December 29th, in light of their actual notice five days after the accident.

Grange relies principally on the Florida cases of State Farm Mut. Ins. Co. v. Ranson, supra, notice delayed thirteen and one-half months, and Morton v. Indemnity Ins. Co., supra, notice delayed six and one-half months, and also the New York case of Wilcox v. Utica Mut. Ins. Co., City Civ.Ct., 236 N.Y.S.2d 119 (1962), notice delayed four months, in support of its argument that the insured did not comply, as a matter of law, with the condition precedent contained in the insurance policy requiring the giving of written notice as soon as practicable. We do not believe these cases are controlling since the fact situation and circumstances in the instant case do not exist in the cited cases.

We, therefore, hold that in view of all of the facts and circumstances in the instant case the jury was justified in finding that notice was given as soon as practicable.

Holding as we have, we need not consider the question of waiver other than to comment that the facts as disclosed by the record were sufficient to justify the trial court in submitting the issue of waiver and supports the jury's verdict in behalf of the insured Hendry.

Affirmed.