198 So.2d 654 (1967)
CONTINENTAL CASUALTY COMPANY, a Corporation, Appellant,
v.
R. SHOFFSTALL, Appellee.
No. 7469.
District Court of Appeal of Florida. Second District.
May 5, 1967.
Rehearing Denied June 1, 1967.
John R. Bush, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Howard L. Garrett, of Garrett & Garrett, Tampa, for appellee.
PIERCE, Judge.
In this case Continental Casualty Company appeals to this Court from a judgment rendered by the Civil Court of Record for Hillsborough County in a suit brought by R. Shoffstall against the Company to recover under a "Blanket Athletic Accident Expense Policy" for medical and hospital expenses incurred in connection with an injury suffered by the plaintiff's minor son, William Richard Shoffstall.
The minor Shoffstall, by his father as next friend, filed suit against the Company on October 22, 1965, alleging the existence of a group athletic policy, which policy allegedly *655 provided coverage for expenses incurred for injuries suffered "while engaging in football practice" at the high school. Written defenses were filed by the Company which, after making general denial of liability urged two affirmative defenses, namely, (1) that neither written notice nor proof of loss were given the Company within the time provided by the policy, and (2) the injury for which the minor plaintiff sought reimbursement occurred while playing basketball during February, 1965, rather than at football practice in November, 1964, as alleged in the Statement of Claim.
Trial of the issues was held before the Honorable Henry O. Wilson, Judge of the Court, acting as both judge and jury, at which numerous witnesses testified, medical depositions were received, and other documentary exhibits were filed. Thereafter, on July 28, 1966, the trial Judge entered his "Findings of Fact and Final Judgment", wherein he found inter alia that the minor plaintiff had injured his back on November 9, 1964, "during a football practice session, and during which he was tackled from behind by a helmeted player, the helmet striking young Shoffstall in the small of his back, as a consequence of which he suffered" physical injuries and muscle spasm, and as a proximate result he was hospitalized from about March 3, 1965 to March 24, 1965, and forced to undergo surgery for a herniated disc.
The Court further found that the Company was not notified of the injury until early in May, 1965, but that "the defendant [Company] was not prejudiced by the failure to give notice within the time period provided by the policy" and that "plaintiff caused notice to be given the defendant within a reasonable time" after becoming aware of the injury and that he was covered by the policy. Damages for medical and hospital expenses were itemized totalling $1,048.95 which, after allowing for a $500.00 deductible in the policy, left a net amount recoverable by the plaintiff of $548.95. Judgment against the Company was accordingly entered.
The Company has appealed said judgment to this Court and assigns as error the failure of plaintiff to notify the Company "within twenty days after the incidence of the injury upon which the claims herein are based" and that the evidence of "causative injury as covered by the policy" was not sufficient to support the judgment. A careful review of the entire record and the briefs of the parties has failed to convince us that the Company has carried its burden of demonstrating reversible error in the judgment complained of, and we therefore affirm.
The policy contained the following provisions as to notice of injury and proof of loss:
"Written notice of injury upon which claim is based must be given to the Company within twenty days after the date such injury occurred.
* * * * * *
"Affirmative proof of loss on which claim may be based must be furnished to the Company not later than ninety days after the date of such loss."
The applicable law with respect to such time limitations shows a marked relaxation from the rigid specifications of such provisions and establishes instead the criterion as being whether the Company has in fact been prejudiced by any delay in receiving notice.
The policy itself provides that 
"[f]ailure to furnish notice or proof within the time provided in this policy shall not invalidate or reduce any claim if it shall be shown not to have been reasonably possible to furnish such notice or proof and that such notice or proof was furnished as soon as was reasonably possible."
As before stated, the trial Court, in entering its judgment, specifically found that notice was given within a reasonable *656 time after plaintiff became aware of the injury, and the Company was not prejudiced by the delay. Such finding, buttressed as it is by substantial, credible evidence, warrants the judgment entered.
Our views find support in the applicable Florida decisions. Reliance Life Ins. Co. of Pittsburgh, Pa. v. Lynch, 1940, 144 Fla. 50, 197 So. 723; Franklin Life Ins. Co. v. Tharpe, 1938, 130 Fla. 546, 178 So. 300; Employers Casualty Company v. Vargas, Fla.App. 1963, 159 So.2d 875; American Fire and Casualty Company v. Collura, Fla. App. 1964, 163 So.2d 784; Hartford Accident and Indemnity Company v. Mills, Fla. App. 1965, 171 So.2d 190.
In Reliance Life, the Supreme Court of Florida held (text 197 So. 724):
"It seems to be settled law in Florida that a default in serving notice or proof of loss as required by a policy may be excused where the circumstances are such as to render strict compliance with the requirements impossible or unreasonable and the insured has not failed to use due diligence."
In Franklin Life, the Supreme Court held (text 178 So. 304):
"A default in serving notice or proofs of loss as required by the policy may be excused, where the circumstances are such as to render strict compliance with the requirement impossible or unreasonable, and insured has not failed to use due diligence."
In Employers Casualty, this 2nd District Court held (text 159 So.2d 877):
"As stated in State Farm Mutual Auto. Insurance Co. v. Ranson, Fla.App., 121 So.2d 175 (1960), cited by both parties, a policy provision as to the time when notice of an accident must be given, such as, `as soon as practicable,' has been construed to mean that notice is to be given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case.
"Under the circumstances in this case, we cannot say that it has been made to appear that the very able trial judge was in error in holding in effect that the insured had given notice of the accident `as soon as practicable.'" (Emphasis in text).
And in American Fire and Casualty, this same 2nd District Court, after quoting the above inserted portion of Employers Casualty, commented:
"In such cases involving breach of the `notice' clauses (i.e., the `delayed notice' cases), the courts are very seldom concerned with the question of prejudice to the insurer; rather, the primary considerations are usually those indicated by the following quotation from 7 Am.Jur.2d Automobile Insurance, § 143:
"`Policy provisions as to the time when notice of an accident must be given take a variety of forms such as "immediate," "prompt," "forthwith," "as soon as practicable," and "within a reasonable time." But the exact phraseology used seems to make very little, if any, difference, and it is well settled that none of these expressions require an instantaneous notice but rather they call for notice to be given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of each particular case. As to what constitutes a reasonable time within which to give such notice, no general rule can be made, since this question depends upon the facts and circumstances of each particular case.'" (Emphasis in text).
In Hartford Fire Ins. Co. v. Redding, 1904, 47 Fla. 228, 37 So. 62, 67 L.R.A. 518, the Supreme Court held that 
"The requirements in the standard insurance policy that the insured shall give notice of loss and make proofs of loss are conditions precedent to the right to *657 sue, but a failure to give the notice or to make the proofs within the time stipulated will not invalidate the policy, or work a forfeiture of the rights of the insured, in the absence of a stipulation to that effect, but will merely postpone the day of payment, where such notice is given and proofs of loss made within such time as will enable the insured to bring his suit within the time limited by the policy."
See also to the same effect, Hirsch-Fauth Furniture Co. v. Continental Ins. Co., D.C.Fla. 1928, 24 F.2d 216; Balogh v. Jewelers Mut. Ins. Co., D.C.Fla. 1959, 167 F. Supp. 763, aff. 5 Cir., 272 F.2d 889; Indian River State Bank v. Hartford Fire Ins. Co., 1903, 46 Fla. 283, 35 So. 228; Hartford Fire Ins. Co. v. Redding, 1904, 47 Fla. 228, 37 So. 62, 67 L.R.A. 518; and National Union Fire Ins. Co. of Pittsburgh, Pa. v. Cone, 1920, 80 Fla. 265, 85 So. 913.
As to the remaining point relied upon by the Company here, namely, the sufficiency of the evidence to show a causal connection between the football injury and liability under the policy, it is hardly necessary to elaborate upon what we have hereinbefore said. The trial Court made specific findings that the medical and hospital expenses incurred by plaintiff, recovery whereof was sought in the instant suit, accrued "as a direct and proximate result of the accident" "during a football practice session" "on November 9, 1964". There was credible, substantial evidence adduced to sustain such finding.
In Ross v. Florida Sun Life Insurance Company, Fla.App. 1960, 124 So.2d 892, Chief Judge Allen for this Court held (text 124 So.2d 894):
"* * * [T]his cause was an action at law and tried below without a jury. In this type case the lower court's findings are entitled to the weight of a jury verdict before the reviewing court, and these findings will not be disturbed unless it is shown that there is a total lack of substantial evidence to support the trial judge's conclusion. Calhoun v. Corbisello, Fla. 1958, 100 So.2d 171; First Atlantic National Bank of Daytona Beach v. Cobbett, Fla. 1955, 82 So.2d 870."
One other consideration, not the least important, influences our disposition of the case sub judice. The Hillsborough County Civil Court of Record was created by Chapter 65-1189 (General Laws of Florida, 1965) as a purely statutory Court. The creating Act is replete with provisions admonishing against undue technicalities in proceedings in said Court.
Thus in Section 6 it is provided that "actions shall be commenced by the filing of a statement of claim in concise form and free from technicalities".
Section 6(b) provides that the "mode of service" may be by "registered mail with a return receipt; or by a person not a party to or otherwise interested in the suit, especially appointed by the judge for that purpose".
Section 6(h) provides that the Judge "shall promulgate such rules and regulations relating to the pleading and practice as he deems essential to expeditious hearings on the merits", that "it shall be unnecessary for the defendant to interpose any formal pleadings except as otherwise ordered by the judge", and that "the judge may promulgate forms to be used by the defendant as a means of advising the court of defendant's intentions to contest the cause or of otherwise specifying defendant's position on issues in the cause."
And, importantly, Section 9(b) states that "the judge shall conduct the trial in such manner as to do justice between the parties according to the rules of substantive law, and all rules and regulations relating to pleading, practice and procedure shall be liberally construed so as to administer justice".
*658 In payment of judgments entered by the Court, Section 11 empowers the Judge to "inquire fully into the earnings and financial status" of the defendant and to "have full discretionary power to stay the entry of judgment, and to stay execution, and to order partial payments in such amounts, over such periods, and upon such terms as shall seem just under the circumstances and as will assure a definite and steady reduction of the judgment until it is finally and completely satisfied".
Finally, Section 12 provides that "the judge of said court shall forthwith and from time to time make rules for the internal control and conduct of said court to effectuate the purposes of this act and and shall have power to prescribe, modify and improve the forms to be used therein, from time to time, to insure the proper administration of justice and to accomplish the purposes hereof." (All emphasis supplied).
Jurisdiction of said Court is limited to claims "up to fifteen hundred dollars ($1,500.00) inclusive of all landlord and tenant cases and proceedings relating to forcible entry or unlawful detention of lands and tenements". The local clerk of the Criminal Court of Record functions also as Clerk of this Court.
All the foregoing provisions setting up the Court evince a definite legislative intent to provide a legal forum for the adjudication of limited claims in an expeditious and inexpensive manner, relatively free from the hamstringing and disenabling influences sometimes encountered in following the strict rules of practice and procedure incumbent upon other common law Courts of more expanded jurisdictions. This is not to say that all modes of common law procedure are to be abandoned. It is to say that in the exercise of its limited jurisdiction, this Court shall have as its polestar the doing of justice between litigants in smaller claim proceedings without hinderance from ofttimes insurmountable technicalities.
The judgment appealed from is affirmed.
Affirmed.
ALLEN, C.J., and MAXWELL, OLIVER C., Associate Judge, concur.