**Marion Whitlock JONES**

v.

**Eugene John LEWIS, Esquire.**

**Civ. A. No. 38492.**

United States District Court
E. D. Pennsylvania.

Dec. 22, 1967.

Samuel Dashiell, Philadelphia, Pa., for plaintiff.

Milford J. Meyer, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for defendant.

## OPINION

WOOD, District Judge.

This is a suit arising out of an unusual state of facts and based solely upon principles of equity as formulated in quasi-contractual actions and now encompassed in the Restatement of Restitution. Both parties have moved for summary judgment. We have before us the deposition of plaintiff taken in this action, affidavits from both parties and the affidavits of several witnesses. Jurisdiction in this suit is based on diversity. Defendant is a resident of Pennsylvania and plaintiff a resident of the District of Columbia.

From the plaintiff's deposition, it appears that Mrs. Jones, a widow of about 42 years of age, was vacationing in Miami Beach in March 1964. While by the poolside of the hotel where she was a guest, she was approached by defendant until than a stranger. After some brief conversation, he invited her first to dinner and when rejected asked her to accompany him to the races that afternoon. On the way to the track, the two stopped off at a restaurant for lunch. While eating, Mr. Lewis, a Philadelphia lawyer and part owner of a race track, offered Mrs. Jones a $20 bill with which to bet and said "Here is $20. You do your own betting. Have fun. If you win more than $20 you can give me my $20 back. If you lose the $20, I don't care, because I am just glad you came to the track with me. It is much more fun to go with someone than to go alone." (Deposition P. 16.)

The two arrived at the track shortly after the races had begun. Plaintiff selected her horses independently from defendant's choices. At some time before necessary, defendant explained to plaintiff the operation of the twin double. She picked horses having names which bore some relationship to herself or her family.[1] Briefly, fortune prevailed and her ticket became worth over $81,000.

The parties then went to the mutuel room to recover. Defendant advised plaintiff that he could save her tax money by declaring him as her partner. She did so, not realizing its significance. Lewis then called her back and urged her to give him some money because "I made this afternoon possible for you." She declined. The mutuel director and ticket seller told her not to give anything. She was called again by defendant and again refused. She went back to the front of the room and was persuaded to step aside again by Mr. Lewis. He demanded one-third of the take. She refused the bid. Once again she was prompted by defendant and finally she "gave in". Plaintiff does not recall what was said except that defendant stated he had made the afternoon possible and should receive a portion of the winnings.

Mrs. Jones was in a high state of exhilaration for the whole period. She was surrounded by reporters and felt pressured on all sides. Before she conceded, she had been approached at the director's desk, her arm had been pulled and she had been asked by Lewis what she was going to do. He kept "hounding me, wanting me to give him some money." When asked whether she recalled how she arrived at the figure of $25,000 which she gave to defendant, she testified:

"No. I was just broken. I was awful excited. The phone was ringing. Reporters were waiting to talk to me. The photographer was there. There was so much confusion, and, as I said, every time Mr. Lewis talked to me then I would go back and the men would talk to me, and Mr. Lewis would call me aside, and it was just a big

---

1. For example, "Challenge Ship" was selected because she had recently started on a new business venture and considered it a challenge.

mess, and I finally broke under it. (Deposition P. 66.)[2]

Mr. Lewis agreed to pay the tax on his share. A check was made out to plaintiff for $56,181.80 and one to defendant for $25,000. The next day Mrs. Jones repudiated the transaction with defendant, asked the track to stop payment on the smaller check and when unsuccessful resorted to suit.

Defendant avers in his affidavit that he was a partner with Mrs. Jones in her choices and should have received one-half of the proceeds. He agreed to take only $25,000 to keep his name out of the newspapers and to avoid undue reprimand.

■ The law of Florida is applicable on this record since that State is the "center of gravity" and has the most significant contacts with the matters in dispute. See Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964).

■■ We believe that plaintiff can recover the money turned over to defendant if she can prove that an injustice has been done under the circumstances as described. See Central Bank & Trust Co. v. General Finance Corp., 297 F.2d 126 (5th Cir. 1961) and Restatement of Restitution, § 1. This action of restitution is available in all circumstances where there is an obligation by the ties of natural justice to refund the money, and where money has been paid over which in all good conscience should be returned to plaintiff. Moss v. Condict, 154 Fla. 153, 16 So.2d 921, 1944).

■ Viewing the evidence as a whole and drawing all reasonable inferences in favor of plaintiff, however, we have concluded that the defendant's motion must be denied. We have been asked in effect to perform the function of the trial judge ruling on a motion for directed verdict. The assignment however is better left to him after a full exposition of plaintiff's case at the trial.

Plaintiff's right to recovery depends on her intent for conceding $25,000 to defendant. Her motives were obviously influenced by the surrounding circumstances. It is difficult if not impossible from the cold record to reconstruct her state of mind in the context of her situation. Her testimony is at times vague and does not leave a clear impression of what actually took place. Specific details are at times contradicted by general impressions. Moreover, whether plaintiff's will was overborne by the pressures exerted by defendant so as to cause her to pay money over to him is a question better resolved by resort to testimony before the fact finder. The unique set of facts before us may have varying effects on reasonable minds.

In conclusion, the weight and general tenor of the testimony are questions for the trial. To find here for the defendant would necessitate impermissible inferences in his favor.

Plaintiff's contentions as to fraud border on the frivolous but will not be considered because the motion must be denied on another ground.

Plaintiff's motion is without merit and accordingly is denied.

---

2. Mrs. Jones also testified on P. 80 (SUPP.) "Mr. Lewis appeared angry and excited and when he shook me after one of these times and said are you going to listen to me, maybe I did feel a little frightened."