**RENUART–BAILEY–CHEELY LUMBER AND SUPPLY COMPANY, Plaintiff-Counter Defendant-Appellant,**

v.

**PHOENIX OF HARTFORD INSURANCE COMPANY, Defendant-Counter Claimant-Appellee.**

No. 71–3184.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1972.

As Amended on Denial of Rehearing Feb. 8, 1973.

Michael R. Storace, Miami, Fla., for appellant.

Steven R. Berger, Miami, Fla., for appellee.

Before TUTTLE, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this diversity case the district court granted summary judgment for defendant, Phoenix of Hartford Insurance Company. The court held that Phoenix rightfully refused coverage under a policy of public liability insurance on the ground that the insurance company did not receive timely notice of an accident from its insured, Renuart-Bailey-Cheely Lumber and Supply Company (RBC). RBC settled the claim against it and then brought this separate action against Phoenix claiming insurance coverage. Our review is limited solely to the question of whether summary judgment was proper in the circumstances of this case. We hold that there were important issues of fact that should have been resolved, vacate the judgment, and remand the case for further proceedings.

On December 5, 1964, John S. Evans purchased a Dewalt table saw from the warehouse of RBC in Miami, Florida. He intended to take his purchase home in his own station wagon. At that point there arises a factual dispute which was not resolved by the district court but which may have substantial significance in our view of the case.

RBC asserts the following: the manager of the RBC warehouse, John Fuller, instructed Percy Brown, an employee of RBC, to assist Evans in carrying the saw to his station wagon. When they arrived at the automobile which was parked on the near side of the public street parallel to the entrance of RBC, Brown asked Evans if he wanted help putting the saw into the station wagon. Evans declined Brown's assistance. Brown then left the immediate area of the automobile and went to a nearby coffee shop. As Brown emerged from the coffee shop, he saw Evans dismantling the legs from a table to which the saw was attached and observed the saw fall on Evans. No employee of RBC was assisting Evans.

Phoenix, however, claims that the employee, Brown, was ordered by the warehouse manager to place the saw inside the automobile and that he was in the active process of doing this when the saw fell on Evans, causing serious injuries which required hospitalization.

Upon the report of Brown to his supervisor and after making an investigation, the insurance department of RBC determined that the accident had not occurred on RBC property and that no employees of RBC had been involved. Considering itself in no way involved in the accident, RBC did not make a report of the incident at that time to its liability carrier, Phoenix.

Although Evans, the injured customer, was not interviewed by RBC when its non-involvement was determined, he subsequently became employed by RBC as a result of a merger with another company. At no time during such employment did he express to any RBC employees any thought that RBC was liable for his injuries.

Thereafter, Evans terminated his employment with RBC. He then sued for his injuries in a state court on the theory that RBC's employees had negligently caused his injuries. The suit was filed two days short of the four year statute of limitations. When RBC received the suit papers it notified Phoenix of the accident and the pending litigation. RBC claims that that is the first time it knew there had been an occurrence for which it might be liable. Initially undertaking to defend the suit, Phoenix later declined coverage and two weeks before the trial date declined to defend. The suit was later settled in favor of Evans for $12,030.

Alleging diversity jurisdiction, RBC then sued Phoenix in federal court for the amount paid in settlement, plus attorneys' fees and costs. A motion for summary judgment in favor of RBC was denied. After other pleadings were filed, Phoenix moved for summary judgment. The district court, in a brief order, granted summary judgment for Phoenix, apparently on the ground that, as a matter of law, the four year delay between the accident and the notice given Phoenix made the notice untimely under the requirements of the policy. From this judgment RBC appeals.

■ We think that summary judgment was improperly granted. The controlling determination is whether the notice was given "as soon as practicable" under the terms of the policy. As a condition to covering the insured's liability to third parties, the policy provides:

"In the event of an occurrence, written notice . . . shall be given by or for the Insured to the company or any of its authorized agents as soon as practicable."

The policy further provides that no action shall lie against the company unless there has been full compliance with this term of the policy. The term "occurrence" is defined in the definitions section of the policy as:

"Occurrence means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

In Hendry v. Grange Mutual Casualty Co., 372 F.2d 222, (5th Cir. 1967), we considered the application of Florida law to an insurance policy containing a similar notice provision. There we recited the applicable standard for a case of this kind:

"The Rule in Florida appears to be that the term 'as soon as practicable' as used in the notice provision of the insurance policy means that notice is to be given within a reasonable time in view of all the facts and circumstances of each particular case. Morton v. Indemnity Ins. Co. of North America, 137 So.2d 618 (Fla.2d Dist. Ct.App.1962), State Farm Mut. Auto. Ins. Co. v. Ranson, 121 So.2d 175 (Fla.2d Dist.Ct.App.1960).

All of the Florida cases bearing upon the question of the requirement of notice being given to the insurer seem to be uniform in the proposition that what is a reasonable time depends upon the surrounding circumstances and is ordinarily a question of fact for the jury. Hartford Acc. & Indem. Co. v. Mills, 171 So.2d 190 (Fla.1st Dist.Ct.App.1965), American Fire & Cas. Co. v. Collura, 163 So.2d

784 (Fla.2d Dist.Ct.App.1964), Employers Cas. Co. v. Vargas, 159 So.2d 875 (Fla.2d Dist.Ct.App.1964).

Whether notice was given 'as soon as practicable' in view of all of the facts and circumstances of the instant case and whether there was a waiver of written notice were certainly questions of fact to be determined by the jury, and the able trial Judge was correct in submitting these issues to the jury in his well worded charge."

372 F.2d at 225–226.

 The primary determination to be made is the time when the insured is first charged with knowledge that there had been an "occurrence" in which it was involved. If the insured made a reasonable determination that there had been no such occurrence, then certainly it would have no duty to report the "non-occurrence" to the insurance company. The facts and circumstances as they were then known or could have been known to RBC upon such investigation as it should have made, as the situation then existed, should control the decision as to whether its actions were reasonable. The conduct of RBC should not be judged by the harsh standard of hindsight. It would not be "practicable" to report an occurrence until the company knew or, by doing those things that it should have done under the circumstances, would have known, that an occurrence within the terms of the policy had occurred. The reasonable time within which the report should have been made would not commence until then. RBC says that it had no occasion to report the occurrence, when it occurred, because it thought it was not involved. Phoenix says that RBC knew it was involved, and therefore should have reported the occurrence. It is this critical fact issue that must be resolved on remand.

It is important to distinguish this situation from a case in which an insured knows that it is involved in an accident but decides that it is not liable, and therefore does not report the occurrence to its insurance carrier. Such a determination by an insured does not relieve it of the obligation to report the occurrence. Florida law clearly provides that an insured cannot prevail where he has failed to render notice because of his own determination of non-liability. Niesz v. Albright, 217 So.2d 606 (Fla. App.1969) ; Deese v. Hartford Accident & ·Indemnity Co., 205 So.2d 328 (Fla. App.1967).

Phoenix argues that the four year delay in giving notice is not "as soon as practicable" as a matter of law. The short answer to this is that Florida does not have such a *per se* time rule but instead grounds each decision on the facts and circumstances of the particular case. Hendry v. Grange Mutual Casualty Co., *supra*; Tiedtke v. Fidelity & Casualty Co. of New York, 222 So.2d 206 (Fla.1969) ; Continental Casualty Co. v. Shoffstall, 198 So.2d 654 (Fla. App.1967) ; Employers Casualty Co. v. Vargas, 159 So.2d 875 (Fla.App.1964).

Vacated and remanded.