784 So.2d 609 (2001)
Alvin SOSA, Appellant,
v.
SHEARFORM MANUFACTURING, etc., et al., Appellee.
No. 5D00-131.
District Court of Appeal of Florida, Fifth District.
May 18, 2001.
Roger G. Stanway, Hollywood, for Appellant.
Marcia K. Lippincott of Marcia K. Lippincott, P.A., Lake Mary, for Appellee, John F. Wylie.
No Appearance for Appellee, Shearform Manufacturing, etc.
PETERSON, J.

UPON MOTION FOR REHEARING AND CLARIFICATION
We grant Alvin Sosa's motion for rehearing and clarification, withdraw our earlier opinion, and substitute the following.
Alvin Sosa appeals a judgment following a non-jury trial finding that he was not entitled to relief against John F. Wylie for breach of contract, money lent, fraud, mismanagement of funds, and civil theft.
Sosa was enticed by Wylie to loan $100,000 to Shearform Manufacturing, L.L.C. (Shearform), a Michigan limited liability company. A form or outline of an agreement was prepared by Wylie's wife, a layperson, that required Sosa to loan Shearform $150,000 in installments of $100,000 and $50,000. The agreement also provided that Sosa would immediately become a one-third "owner"[1] of Shearform *610 and that a Michigan attorney would immediately draw up and implement a purchase agreement[2] between "Wylie/(sic) Lewis and Sosa." Lewis was named as the third party to the agreement and took part in the negotiations by phone.
Sosa made the initial $100,000 payment to Shearform, but did not make the second $50,000 installment when he failed to receive the purchase agreement that was to be immediately prepared by a Michigan attorney. Although Wylie and Lewis had the obligation to see that this was accomplished, Wylie was frustrated by the failure of Lewis to carry out this task. Nevertheless, Wylie made demand upon Sosa for the $50,000 installment. When Sosa failed to make the loan to Shearform, Wylie advised him that he was neither a director[3] nor member of Shearform. It appears that no effort was ever made to carry out the promise to make Sosa a member, immediately; this omission constituted a breach of the agreement and preceded Sosa's refusal to pump more funds into Shearform.
The trial court found that although Wylie's initials appeared on the outline of the agreement, it was not tantamount to a signature because there was an issue as to when and for what purpose Wylie had penned a notation and initials on the typed draft. Even if parties do not sign a contract, they may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force. See James Register Constr. Co. v. Bobby Hancock Acoustics, Inc., 535 So.2d 339, 340 (Fla. 1st DCA 1988); see also Gateway Cable T.V., Inc. v. Vikoa Constr. Corp., 253 So.2d 461, 463 (Fla. 1st DCA 1971). We accept the court's finding on this issue.
We do not agree with the court's conclusion that Sosa first breached the agreement by failing to pay the second installment to Shearform. See generally Calhoun v. Corbisello, 100 So.2d 171 (Fla. 1958). "Where the time for the performance of an executory contract ... is being performed, and one of the parties notifies the other unequivocally that he will not perform or further perform his part,... the latter may treat the contract as... entirely broken by the former, and, if ready and willing to perform his part, sue him at once for an entire breach of the contract...." Mori v. Matsushita Elec. Corp. of America, 380 So.2d 461, 464 (Fla. 3d DCA 1980) (quoting Sullivan v. McMillan, 26 Fla. 543, 8 So. 450, 457-59 (1890)). It was Wylie and Lewis who first breached the agreement with Sosa when they did nothing to immediately perform their obligation to create a "purchase agreement" and install Sosa as a member and director of Shearform. This was an important feature of the agreement because Shearform's operating agreement prohibited disbursements of over $5,000 and all loans unless approved in writing by all members. Both of these provisions would have been violated without the requisite written agreement by Wylie, Lewis, and Sosa had the latter been immediately admitted as a member of Shearform. Wylie testified after the fact that it was understood that Sosa would become a member only after he loaned both installments to Shearform, but *611 the memorandum of their agreement belies that. It was patently unfair for Wylie to demand Sosa's second payment due three weeks after the first installment and do absolutely nothing to install Sosa as a member.
We do observe that although Wylie's and Lewis' promises to Sosa were never fulfilled, it may have been beneficial to Sosa in that it caused him to balk at loaning the additional $50,000 to Shearform, a company that ultimately failed.
In summary, we agree with the trial court that Wylie is not obligated on the loan of $100,000 that Sosa made to Shearform and that the parties operated under the January 7, 1997 memorandum of agreement marked as "Exhibit 5" of the record on appeal. See James Register, 535 So.2d at 340. We disagree that it was Sosa who first breached the agreement. Accordingly, we vacate the final judgment in toto, remand for further proceedings consistent with this opinion and to determine whether Wylie's breach prior to Sosa's refusal to make additional payments to Shearform would allow recovery against Wylie under any count of the second amended complaint. If so, the trial court should determine the amount of damages.
JUDGMENT VACATED; REMANDED.
SHARP, W., J., and POWELL, R. W., Associate Judge, concur.
NOTES
[1] The correct designation of an ownership interest pursuant to Shearform's operating agreement was "member."
[2] Although a subsequent purchase agreement may have been contemplated, none was ever prepared by Wylie who began a course of action based upon the outline when he insisted upon performance by Sosa. Sosa initially complied by loaning $100,000 and buying a computer for Shearform.
[3] Shearform had no directors; the members managed the affairs of the limited liability company.