[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 29, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11019
Non-Argument Calendar

_____

D. C. Docket No. 07-01502-CV-ORL-22-GJK

R. W. KIRK,
Trustee for the R. W. Kirk IRA,

Plaintiff-Appellee,

versus

NASA CORRIDOR LIMITED PARTNERSHIP,
a South Carolina Limited Partnership,
FRANK KROBOTH,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 29, 2009)

Before CARNES, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

NASA Corridor Limited Partnership appeals the district court's grant of summary judgment to R.W. Kirk.[1] NASA contends that the district court erred in concluding that Kirk had a valid interest in three units of the NASA partnership.

## I.

A case involving parties named Kirk and NASA brings to mind images of space exploration. But the dispute in this case involves a far less celestial subject—real estate. NASA Corridor, a South Carolina Limited Partnership, was formed in 1987 as a real estate venture to purchase a tract of land in Brevard County, Florida. Kirk held a mortgage on that property. In 1994 and 1995, NASA fell upon hard times and defaulted on the mortgage by failing to make timely payments. Facing the prospect of foreclosure, Kirk and NASA's general partner, John Snipes, negotiated an alternative arrangement to pay off the mortgage. In exchange for the satisfaction of the mortgage, Snipes agreed to grant Kirk, among other things, a forty-percent "limited partnership ownership interest" in NASA.[2] The contract between Kirk and NASA stated that Kirk's interest would be "non-contributing, non-assessable and non-reducible."

---

[1] R.W. Kirk has brought this suit on behalf R.W. Kirk IRA, for which Kirk is the trustee. For the sake of convenience, we will refer to them collectively as "Kirk" unless context requires otherwise.

[2] NASA also agreed to deed back a portion of the property to Kirk and to grant his company, Kirk Realty, Inc., a two-year exclusive right to sell the property that NASA held.

In March 1995 Snipes sent Kirk a fax stating that he was assigning Kirk ownership of three units of limited partnership interest in NASA. Snipes included two documents along with the fax. The first document, which Snipes stated he was including "for [Kirk's] information," was entitled "Assignment of Limited Partnership Interest" (Assignment Form). The Assignment Form provided that NASA "irrevocably assigns" Kirk an interest in three limited partnership units of NASA. The Assignment Form noted that the assignment "is made in consideration of the assumption by the Assignee of all obligations and covenants" of the partnership. Snipe also faxed Kirk a document entitled "Assumption of Partnership Obligations" (Assumption Form), which Snipes described in the fax as "our standard form for transfer." The Assumption Form provided that the assignee (Kirk) "assumes and agrees to perform and comply with . . . all of the covenants of the Partnership Agreement." Before signing the Assumption Form, Kirk modified it by adding language stating that the three assigned units "are non-contributing, are not required to pay any expense whatsoever and are non-reducible."

Kirk later discovered that his three-unit interest in NASA represented only an 8.5714% interest in the partnership, instead of the 40% interest he had expected. Through his lawyer, Kirk requested that NASA make up the difference by either assigning him more shares in NASA or deeding him an interest in the property.

NASA opted for the second option and deeded Kirk a 31.4286% undivided interest in the property. An agreement accompanying the deed provided that Kirk's interest in the property was "non-contributing and non-reducible" and that Kirk "will not be required to advance any portion of the annual taxes or other expenses of the property."

In September 2006 Kirk and NASA sold the property to Home Depot. By then, Frank Kroboth had replaced Snipes as NASA's general partner. Although Kroboth paid Kirk $646,775.01 of the sales proceeds based on his 31.4286% ownership interest in the property under the deed, Kroboth refused to pay Kirk a distribution based on his interest in three units of NASA. According to Kroboth, Kirk did not have a valid interest in NASA because the purported assignment of the three units was void for not complying with NASA's partnership agreement.

Kirk filed this lawsuit seeking a declaratory judgment that he owned a three-unit interest in NASA and was owed a $127,120.25 distribution based on that interest. Both parties filed motions for summary judgment. The district court granted Kirk's motion and denied NASA's. This is NASA's appeal.

**II.**

We review <u>de novo</u> the district court's grant of summary judgment. <u>Brinson v. Raytheon Co.</u>, 571 F.3d 1348, 1350 (11th Cir. 2009).

4

NASA contends that Kirk does not have a valid interest in the three units of the partnership because the purported assignment by Snipes to Kirk violated the terms of NASA's partnership agreement. NASA raises three contentions, none of which is convincing.

We begin with NASA's primary contention that the assignment was invalid because Kirk altered the Assumption Form by inserting language stating that the three assigned units "are non-contributing, are not required to pay any expense whatsoever and are non-reducible." NASA argues that inserting the language violated NASA's partnership agreement because it does authorize any units that "would not be responsible for their share of the expenses of the Partnership." NASA also argues that the alteration violated several other provisions of the partnership agreement regarding the rights and duties of limited partners.

Those arguments rely on the faulty premise that the parties intended for Kirk to become a limited partner. They did not. Instead, as the district court properly recognized, "[t]he agreement between Kirk and Snipes effected a transfer of a limited partnership interest, not the right of Kirk to become a limited partner." That distinction is made clear in the South Carolina Code, which provides:

> An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be

5

entitled.

S.C. Code § 33-42-1220. The South Carolina Code also provides that unless a partnership agreement states otherwise, "a partnership interest is assignable in whole or part." Id.

Not only does NASA's partnership agreement not prohibit assignment of interests, it specifically authorizes them. We agree with the district court that the parties never intended for Kirk to become a limited partner in NASA. Instead, they intended to assign Kirk an interest in three limited-partnership units. That interest would entitle Kirk to a share of the distribution when NASA sold the property. That was what Kirk wanted, and that is what Snipes intended to transfer to him.

NASA also argues that Kirk "changed the consideration" contemplated in the Assignment Form when he altered the Assumption Form. We are unconvinced. The agreement between the parties was that NASA would grant Kirk a forty-percent interest in the partnership if Kirk would release the mortgage he held on NASA's property. The parties never intended for Kirk to give anything other than that release. In fact, the agreement explicitly provided that Kirk's interest would be "non-contributing, non-assessable and non-reducible." When Snipes sent Kirk the Assumption Form, he described it as "our standard form for transfer." Kirk simply modified that standard form to reflect the specifics of their agreement. That

6

was proper and did not alter the "consideration" Kirk was providing in exchange for NASA's assignment.

NASA further argues that the assignment was invalid because it failed to satisfy § 5.01 of the partnership agreement, but that provision applies only to transactions by limited partners. Snipes was a general partner in NASA when he assigned the three-unit interest to Kirk. Therefore, the restrictions in § 5.01 do not apply. In a related argument, NASA asserts that Snipes never signed the Assumption Form or returned a copy of his consent to the assignment to Kirk. As the district court noted, however, NASA's partnership agreement does not require execution of a consent form in order to transfer a limited partnership interest. Additionally, it is undisputed that after Kirk notified NASA that three units of the partnership represented only a 8.5714% interest, NASA deeded Kirk a 31.4286% interest in the property to make up the difference. That conduct demonstrates an inference that NASA acknowledged Kirk's ownership of a three-unit interest in the partnership. See Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500, 503 (Fla. 4th DCA 2003) ("A contract may be binding on a party despite the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties." (internal citation and quotation marks omitted)); Sosa v.

7

Shearform Mfg., 784 So.2d 609 (Fla. 5th DCA 2001) ("Even if parties do not sign a contract, they may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force.").

NASA closes with the last-ditch contention that Kirk's claim is barred by the statute of limitations. NASA concedes that it breached its agreement to assign Kirk a three-unit interest in the partnership, but argues that breach occurred in 1995 (and therefore outside the statute of limitations). It argues that the breach occurred in 1995 because that is when it purported to assign Kirk a three-unit interest in the partnership, but that assignment allegedly failed because it was prohibited by the partnership agreement. That argument is unconvincing. The assignment could be, and was, made in 1995. As the district court properly concluded, NASA breached the contract when it refused to pay Kirk his share of the distribution based on his three-unit interest after the property was sold to Home Depot. The breach therefore occurred on December 12, 2007.

We agree with the district court that Kirk had a valid interest in three units of NASA and that he was entitled to a distribution based on that interest.

**AFFIRMED.**